**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 4, 2010

No. 09-50283

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAVID ROGER ALLEN,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY and GARZA, Circuit Judges and STARRETT[1], District Judge.
KEITH STARRETT, District Judge:

David Roger Allen (Allen) appeals the district court's denial of a motion to suppress evidence seized in an allegedly illegal search. He argues the search warrant was overbroad, lacked particularity, was based on stale information and was not supported by probable cause. Allen, a college professor and first time offender, was indicted by a federal grand jury on May 28, 2008. The indictment charged Allen with two Counts of Shipping by Computer, Visual Depictions of Minors Engaging in Sexually Explicit Conduct (Counts One and Two) and another Count charging Receiving Matter Containing Visual Depictions of Minors Engaging in Sexually Explicit Conduct (Count Three).

---

[1] District Judge of the Southern District of Mississippi, sitting by designation.

09-50283

Allen filed a motion to suppress the evidence seized from his home pursuant to a search warrant on the basis that the search warrant was invalid under the Fourth Amendment because it lacked particularity and was not supported by probable cause. After an evidentiary hearing, the district court denied the Motion to Suppress and excluded, as irrelevant, the testimony of a defense witness offered in support of the motion. The district court later entered a written order memorializing the denial of the motion.

On September 3, 2008, following denial of his motion to suppress, Allen pled guilty to Count Three of the Indictment pursuant to a plea agreement. In the plea agreement, Allen waived his right to appeal the conviction or sentence, but reserved the right to appeal the motion to suppress and any and all evidentiary rulings made during the hearing on the motion to suppress. The remaining two counts were dismissed.

As set forth in the Factual Basis filed in support of the guilty plea, the following occurred:

> In July of 2006 Agents with Immigration and Customs Enforcement (ICE) identified an individual in Oregon by the name of Jeremy Rice. A forensic examination of Rice's computer reveal[ed] over 1,800 images depicting minors engaging in sexually explic[i]t conduct. Rice was found to exchange or share those files using a Google program called Hello. Rice was found to have exchanged these child pornography images with an individual later identified as Jerry Mikowski of Michigan. Mikowski's computer was seized on or about March 29, 2007, during the execution of a court authorized search warrant. A forensic examination of Mikowski's computer revealed approximately 2,000 images of child pornography. A list of Mikowski's Google Hello "friends" included "mrhyde6988". A subsequent investigation revealed "mrhyde6988" to be this defendant. A file found on Mikowski's computer entitled "from mrhyde6988" contained two images of minor females, the reviewing Magistrate Judge found these images to depict minors engaging in sexually explicit conduct, to wit: the lascivious exhibition of the genitalia of these children.
>
> On or about May 15, 2008, ICE Agents executed a court

2

09-50283

authorized search warrant at the defendant's residence. Several computers and external hard drives were seized. A forensic examination of the defendant's computer revealed approximately 3,300 images of child pornography, of those approximately 40 images, including duplicates, involved depictions of children involved in "bondage", a form of sadomasochism, and approximately two depict children involved in beastiality [*sic*]. The children depicted in these images vary in age from infancy to approximately 15 years of age.

On or about December 13, 2006, the defendant shared images with Mikowski, known to him as "candyman". Additionally, on or about February 22, 2007, the defendant also used the Google Hello program on his computer to send several images to an individual known only as "lilangel55555". During the investigation, Agents discovered that, in addition to receiving child pornography images, the defendant also shipped and transported child pornography images in interstate commerce. These images were sent using the Google Hello program.

Allen was sentenced on Count Three to 121 months imprisonment and 10 years of supervised release. He subsequently filed a timely notice of appeal, arguing that the district court erred in denying his motion to suppress. Specifically, Allen contends that the search warrant lacked particularity, in violation of the Fourth Amendment, and was based on stale information, over-broad, and not supported by probable cause. Allen further contends that the two images found on the Michigan computer did not depict minors engaged in sexually explicit conduct and thus were insufficient to provide the magistrate judge with a substantial basis for concluding that probable cause existed to issue the warrant. Finally, Allen appeals the exclusion of testimony at the suppression hearing.

**STANDARD OF REVIEW**

When reviewing the denial of a motion to suppress, we review factual findings for clear error and legal conclusions regarding the sufficiency of the warrant or the reasonableness of an officer's reliance on a warrant *de novo*.

09-50283

*United States v. Cherna*, 184 F.3d 403, 406 (5th Cir. 1999)(citing *United States v. Kelley*, 140 F.3d 596, 601 (5th Cir. 1998)).  We view the evidence in the light most favorable to the prevailing party, in this case, the United States.  *United States v. Garza*, 118 F.3d 278, 282 (5th Cir. 1997).

The Fourth Amendment requires a warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The Fourth Amendment's particularity requirement demands that the place to be searched and the items to be seized be described with sufficient particularity so as to leave "nothing . . . to the discretion of the officer executing the warrant."  *Marron v. United States*, 275 U.S. 192, 196 (1927); *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986)("The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized.").  *See also United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) ("The particularity requirement 'makes general searches . . . impossible.'" (quoting *Marron*, 275 U.S. at 196)).

"A general order to explore and rummage through a person's belongings is not permitted."  *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A Sept. 1981).  "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."  *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984) (internal citations omitted)).  "When the Government conducts a search pursuant to a warrant that does not particularly describe the things to be seized, the appropriate remedy is for the court to exclude from the evidence in a later criminal action the items improperly taken."  *Cook*, 657 F.2d at 734.

This Court conducts a two-part inquiry to determine whether a seizure conducted pursuant to a search warrant violated the Fourth Amendment.  *Cherna*, 184 F.3d at 407.  First, we ask whether the seizure falls within the good-

faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 920-21 (1984); *Cherna*, 184 F.3d at 407. The good-faith inquiry is confined "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 923 n.23. Thus, under the good-faith exception, if the evidence was obtained by law enforcement officers who relied on the warrant in objectively reasonable good-faith, then the evidence obtained during the search is admissible. *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000) (citing *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997)) . This is true even if the evidence in the affidavit on which the warrant was based was not sufficient to establish probable cause. *Id.* If the good-faith exception applies, this court affirms the district court's decision denying the motion to suppress. *Id.* If the good-faith exception does not apply, then this court goes to the second step and determines whether the magistrate issuing the warrant had a "substantial basis for believing there was probable cause for the search." *Id.* (citing *Cherna*, 184 F.3d at 407).

**ANALYSIS**

At the suppression hearing, and in his motion to suppress, Allen argued that the good-faith exception to the exclusionary rule should not be applied because the warrant was overly broad and failed the particularity requirement and that no reasonable officer should have relied on the validity of the warrant. Allen also argued that the warrant was so lacking in probable cause that no reasonable officer would have believed the warrant was valid.

The Government concedes that the warrant was not sufficiently particularized and that the attachment detailing the items to be seized was not incorporated by reference in the warrant. Nevertheless, the Government contends that, under the circumstances, the agents involved in the search reasonably believed that the warrant was valid because the warrant application,

affidavit, and attachments had been reviewed by several ICE agents and the United States Attorney's Office prior to submission to the magistrate judge. The magistrate judge then reviewed the documents and ultimately signed both the warrant and affidavit. Furthermore, Agent Stone, the agent in charge, made certain that those taking part in the search reviewed the warrant, affidavit, and attachments and were familiar with what could be seized.

The Government also emphasizes that the agents exercised restraint during the search by contacting the U.S. Attorney's Office several times during the search whenever there was a question about what could be seized. Thus, the Government argues that the evidence seized was admissible under the good-faith exception to the exclusionary rule.

The warrant at issue clearly does not pass constitutional muster. It is undoubtedly broad because of its lack of particularity, absent the affidavit and attachments. Simply incorporating the affidavit and attachments, which stated specifically what the search entailed and what was to be seized, by reference in the warrant could have cured the deficiency of the warrant. That being said, the issue here is not the constitutional invalidity of the warrant, but whether the evidence seized pursuant to the unconstitutionally vague warrant should be suppressed. Indeed, the Supreme Court has clearly stated that suppression is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Leon,* 468 U.S. at 906 (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)).

Even though the warrant in this case was not sufficiently particular, we conclude that the fruits of the search are admissible under the good-faith exception. *See Leon*, 468 U.S. at 913 ("[O]ur evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible . . ..."). The district court correctly found

that the agents involved acted in objectively reasonable good-faith in relying on the search warrant.

As the Supreme Court pointed out recently in *Herring v. United States*, __ U.S.__, 129 S. Ct. 695, 699-700 (2009), the exclusionary rule is a judicially fashioned remedy whose focus is not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution. Therefore, evidence should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 701 (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)); *see also United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009).  Otherwise, the "good-faith" rule of *Leon* applies.

The *Herring* Court identified several critical factors in deciding whether or not evidence should be excluded: whether the application of the exclusionary rule results in deterrence; whether the benefits of deterrence outweigh its costs; and whether the misconduct was flagrant or deliberate. *Id.* at 700-02.  Then the Court stated:

> An error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place.
>
> . . .
>
> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

129 S.Ct. at 702.

Here, the police conduct was neither deliberate nor sufficiently culpable to warrant application of the exclusionary rule.  It is clear from reading the

transcript of the suppression hearing that Agent Stone, the officer who sought the warrant and submitted the affidavit, had reason to believe the search warrant was proper and was supported by probable cause. He testified that he prepared the application for the warrant, the affidavit, and the warrant. Prior to asking the magistrate judge to execute the warrant or having the paperwork reviewed by the U.S. Attorney's office, the agent reviewed the affidavit, the warrant and the application with his co-workers and other agents in his office. Agent Stone also had another agent review the pictures recovered and obtained the other agent's agreement that the pictures were child pornography.

After the review by his co-workers, Agent Stone presented the application and warrant to the U.S. Attorney's office for review. Only after that review was complete, did Agent Stone present the affidavit to Magistrate Judge Platt for review. Judge Platt took the time to review the affidavit and the search warrant. The agent also testified that Judge Platt signed off on language in the search warrant that states, "I am satisfied that the affidavit and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above described and establish grounds for the issuance of this warrant." It is clear from the testimony given that Magistrate Judge Platt carefully reviewed the warrant, the affidavit, and the attachment and did not just give the documents a cursory review. Furthermore, he signed the affidavit to which the specific list of items to be seized was attached.

Prior to executing the search warrant, Agent Stone gave his fellow agents, including the forensic analyst, a copy of the search warrant as well as the affidavit and attachments which specifically listed the items to be seized. Stone testified that he did this so they could review it and know what they were searching for. In fact, all of the agents and law enforcement officers who participated in the search were given the affidavit and attachments in advance

of the search. There was a brief meeting before executing the warrant, but the affidavit and its attachments were all reviewed and handed to the agents prior to that meeting. Agent Stone told the court at the suppression hearing that after they began executing the warrant, they contacted the U.S. Attorney's office several times with questions about what they could seize.

During the hearing Agent Stone was asked, "Did you have any reason to believe prior to executing the search warrant that it was not valid? He answered, "No, ma'am." Then the AUSA asked, "Did you, in fact, think that it was a valid warrant and that you had taken the necessary steps to be cautious and actually make sure you had a valid warrant that was approved not only by a magistrate but by the U.S. Attorney's office and your colleagues at ICE?" The Agent answered, "Yes, ma'am, I did." Although the good faith inquiry is ultimately an objective one, the record clearly demonstrates that Agent Stone had a subjective belief that the warrant was valid and the search was constitutional. Further, his actions and those of the magistrate judge gave Agent Stone good reason to believe in the warrant's validity.

Allen argues that the warrant was so facially deficient in failing to particularize the things to be seized that Agent Stone could not reasonably believe the warrant was valid. As stated, the Government agrees that the warrant was not sufficiently particularized and that the attachment, which described in detail the items to be seized, was not referenced in the warrant. However, not every deficient warrant is so deficient that an officer would lack a reasonable basis for relying on it. *Otero*, 563 F.3d at 1136. As the Tenth Circuit has stated, a reviewing court "must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid." *United States v. Riccardi*, 405 F.3d 852,863 (10th Cir. 2005) (quoting *United States v. Leary*, 846 F.2d 592, 607 (10th Cir. 1988)).

09-50283

In this case, although the language that was ultimately used in the warrant was flawed in that it did not reference the Exhibit containing the affidavit and list of items to be seized, a reasonable officer could have easily concluded that the warrant was valid. The warrant, along with the affidavit and attached list of items to be seized, had been reviewed at many levels, and the affidavit had been signed by the magistrate judge.   Agent Stone clearly attempted to properly perform his duty prior to seeking the magistrate's approval to make sure he had drafted a valid warrant that was supported by probable cause.  The ultimate mistake was not that the documentation was insufficient to support issuance of the warrant, but that the attachment and affidavit were not properly incorporated into the warrant by reference.

Allen argues that the warrant must be suppressed under *Groh v. Ramirez* in which the Court denied qualified immunity to agents who acted on a search warrant that was insufficiently particular. The district court below decided that the *Groh* case did not require suppression in the instant case.  As support for this conclusion, the district court pointed out that *Groh* was a civil case in which the agents were being sued in their personal capacity.  It did not deal with whether or not the exclusionary rule should be applied. The Government argues that this distinction is relevant and points to the Seventh Circuit, which has said:

> *Groh* was a suit for damages; we doubt that the Court would have invoked the exclusionary rule when a description of the things to be seized, though missing from the warrant, appeared in an affidavit that was filed with the court in support of the application and was respected when the search occurred.

*United States v. Cazares-Olivas*, 515 F.3d 726, 729 (7th Cir. 2008).

However, the district court was incorrect to distinguish *Groh* on the basis of its civil origins.  As the *Groh* Court itself pointed out, "the same standard of objective reasonableness that we applied in the context of a suppression hearing

in *Leon* defines the qualified immunity afforded an officer." *Groh*, 540 U.S. at 565 n.8 (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)(other citations omitted)).

The district court also held that there was no "glaring deficiency" in this case as there was in *Groh*. In *Groh*, the portion of the warrant calling for the items and persons to be seized described a "single dwelling residence two story in height which is blue in color." The description of the property to be seized in this case was "[p]roperty designed or intended for use or which has been used as the means of committing a criminal offense or that contains evidence of the commission of a criminal offense." While this may not rise to the *Groh* level of a "glaring deficiency," it is certainly an obvious error which makes the warrant facially invalid.

Nevertheless, this case is distinguishable from *Groh*. The distinguishing factor in this case is that the magistrate judge signed not only the warrant, but also the affidavit, to which the list of items to be seized was attached. Thus, the executing officer who prepared the warrant, the affidavit and the attachment and had them reviewed by his colleagues, the prosecutors and the magistrate judge had additional objective reason to believe the warrant was valid. Because of this, the officer's conduct was less culpable, and therefore less likely to be deterred by applying the exclusionary rule, than the conduct in *Groh*.

Additionally, the magistrate judge's signature on the affidavit reduces the concern that he did not agree to the scope of the search as defined and limited therein. This demonstrates that one of the core purposes of the Fourth Amendment, preventing a "general" search by having a magistrate restrict the scope of the search, was achieved here. *See Groh*, 540 U.S. at 561 & n.4 ("[W]e therefore cannot know whether the Magistrate was aware of the scope of the search he was authorizing."); *see also United States v. Tracey*, 597 F.3d 140, 153 (3d Cir. 2010) (finding good faith when an officer failed to properly incorporate

a detailed affidavit that was physically attached to the warrant, where the magistrate signed each page of the affidavit and the search was executed by the officer who prepared the warrant; and noting that "the primary purpose of the Fourth Amendment's particularity requirement . . . was achieved in this case").

This case is factually similar to both *Otero* and *Riccardi*, two previously cited Tenth Circuit cases which applied the good-faith exception. In *Otero*, the Court considered the circumstances surrounding the issuance of the warrant and the execution of the warrant in deciding whether or not the good-faith exception applied. *Otero*, 563 F.3d at 1134. The *Otero* Court noted that the officer had attempted to craft a warrant that would authorize a search for evidence of mail and credit card theft. *Id*. While the language was deficient and it failed the particularity requirement of the Fourth Amendment, the Court noted that the officer had sought the assistance of the Assistant United States Attorney who had assured the officer that the language satisfied legal requirements and had received approval from the magistrate. *Id*. Moreover, the *Otero* Court noted that the search was limited to evidence of the mail and credit card theft. *Id*.

In *Riccardi*, the Tenth Circuit considered a case in which the warrant to seize and examine the defendant's computer failed to satisfy the Fourth Amendment's particularity requirement. *Riccardi*, 405 F.3d at 863. Nevertheless, the Court found that certain factors supported the district court's finding that there was good-faith. This included the fact that the investigating officers carefully limited their search to files relevant to the investigation, and to the scope of the search as it was described in the affidavit. Moreover, the officers, as in the instant case, temporarily suspended their search to ask questions of legal counsel. *Id*. at 864.

As in *Otero* and *Riccardi*, the agents in this case limited their search to evidence of child pornography and seized only the evidence that was specified on Exhibit B to the affidavit. The care Agent Stone took in making sure everyone

09-50283

had a copy of the affidavit and supporting documents prior to the search indicates the officer was dedicated to doing things the proper way. Based on these factors, the good-faith exception should be applied in this case.

We therefore conclude that the error in this case simply does not rise to a level which requires application of the exclusionary rule. Although the executing agent was partially at fault, as he is the one who drafted the warrant and failed to incorporate the attachment and the affidavit into the warrant, the fault was merely negligent. There was no deliberate, reckless or grossly negligent conduct by law enforcement officers generally, nor specifically by the executing agent. Nor was there recurring or systemic negligence. *See Herring*, 129 S.Ct. at 702. Exclusion of the evidence seized under the authority of the invalid warrant in this case therefore would not have the desired deterrent effect under *Herring*. Accordingly, the district court did not err in denying Allen's motion to suppress. The negligent mistake in the warrant does not require "the extreme sanction of exclusion." *Id*. at 700.

The Government argues that because the good-faith exception applies, this court need not consider the issue of whether there was sufficient probable cause. However, because the good-faith exception applies to the particularity challenge does not presume its application to the other challenges leveled by Allen. Regardless, we find that the search resulting from reliance on the evidence of child pornography used to establish the basis for the issuance of the warrant was not stale and that sufficient probable cause existed for the issuance of the warrant. We also conclude that the district court did not err in excluding the proffered testimony regarding the lascivious nature of the images used to establish probable cause. Each of these findings will be discussed in turn.

A magistrate's determination of probable cause is entitled to great deference by reviewing courts. *Gates*, 462 U.S. at 216 & n.10. A magistrate needs only a substantial basis for concluding that a search would uncover

13

evidence of wrongdoing. *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980). As this court has said, the task of a magistrate signing a search warrant is simply to make a "practical common-sense decision as to  whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (internal quotation marks and citation omitted).

The affidavit certainly provided enough information to permit the magistrate to decide that there was a fair probability that child pornography would be found at Allen's home. The affidavit detailed how the investigation began. Computers seized from Jeremy Rice revealed data associated with the Google program "Hello." The affidavit explained that the Hello program allowed users to create a friend's list of other Hello users by adding their email addresses to their friends list. Friends can access each other using an encrypted connection. The peer-to-peer networking provided by this program allows friends to chat and trade data files, including images, in an encrypted format. The examination of Rice's computer revealed he had accessed the Hello account with the name and exchanged over 1800 image files with four friends, one of whom was identified as "candyman04." Many of the files depicted children engaged in sexually explicit conduct. ICE subsequently identified "candyman04" as Jerry Mikowski.

When Mikowski's computer was searched, a file named "friends.xml" was discovered. The file contained a list of Mikowski's current Hello "friends." The examination also revealed that Mikowski traded child pornography with dozens of Hello users. One friend was identified as "mrhyde6988."[2]

---

[2] Mikowski was subsequently convicted of Distributing Images of Minors Engaging in Sexually Explicit Activity in violation of 18 U.S.C. § 2252(a)(2).

09-50283

Information provided by Google pursuant to a subpoena indicated that the Hello user name "myrhyde6988" used the email address mrhyde6988@yahoo.com. Google records indicated that "mrhyde 6988" registered with the Google Hello program on December 6, 2006 and that he had logged into the program from only one IP address from April 17, 2007 through May 7, 2007 and he had accessed the program 23 times during this period.

Yahoo, pursuant to a subpoena, provided information on the "myhyde6988@yahoo.com" email address. Yahoo identified the same IP address that Google had given investigators earlier. Their information indicated the account holder was a Mr. Hyde from New York, New York. A third subpoena, this time to Clearwire, LLC, revealed the IP address was associated with David Allen in Midland, Texas.

Images were obtained from Mikowski's (candyman04) computer. The images were of what appeared to be prepubescent females posing nude. The images came from a file named "frommrhyde6988." This indicated to the agent that "mrhyde6988" distributed at least two images of children engaged in sexually explicit conduct. The affidavit described the images in detail. The file name of the first image was "11 very hot."

This information was clearly sufficient to support the magistrate's decision that there was probable cause to believe evidence of child pornography would be found in Allen's home on his computer. The information presented in the affidavit proved pornographic images had been sent to candyman04 and placed in a file labeled with Allen's user ID for the Hello program. The investigation traced the user name and the IP address used to access the Hello program to Allen's computer in Midland. Therefore, it was reasonable for the magistrate to conclude Allen had sent copies of the pornographic images to his Hello friend "candyman04" and that he still either retained those images or had more stored on his computer. *See Froman*, 355 F.3d at 890-91 (upholding a finding of

15

probable cause to search the defendant's computer and other electronic equipment, stating that "it is common sense that a person who voluntarily joins a group such as Candyman [an online pornography club], remains a member of the group for approximately a month without cancelling his subscription, and uses screen names that reflect his interest in child pornography, would download such pornography from the website and have it in his possession").

Allen argues that the fact that images of child pornography on candyman04's computer were labeled "frommrhyde6988" was not sufficient probable cause to support the warrant.  Allen submits that candyman04 could have labeled the files this way even if they were not sent to him by mrhyde6988.  Allen's argument ignores the fact that he had enrolled in the Hello program and had become one of candyman04's online "friends."  When those facts are coupled with the way the files are labeled, there is clearly probable cause to believe Allen had transmitted child pornography over the internet with his computer.

The affidavit also states that the forensic examination of Mikowski's (candyman04) computer revealed that Mikowski "traded child pornography with dozens of Hello users.  One user with whom Mikowski traded child pornography was identified as 'mrhyde6988'".  The fact that Mikowski was using the Hello program to trade child pornography with dozens of users makes it likely that he had also traded child pornography with Allen.  It also further supports the conclusion that the photos labeled from "frommrhyde6988" were in fact from Mr. Hyde, who was later identified as Allen.

As the district court noted, the "peculiarity of the user name 'mrhyde6988,' the fact that this user name was listed as one of Mikowski's 'friends' on the file sharing service on which he was known to trade child pornography, and the fact that a file containing child pornography was labeled 'frommrhyde6988' on Mikowski's computer, provides enough information for this Court to find that probable cause existed."  We agree.

Further, Allen used a false name and address when he opened an account for his "mrhyde6988@yahoo.com" email address. Clearly, the magistrate could infer that Allen wanted to conceal his identity by using the name "Mr. Hyde" and a New York address because he was involved in distributing child pornography. The affidavit is not required to give the magistrate proof beyond a reasonable doubt. Rather, the Fourth Amendment requires only that there is probable cause to believe that the fruits, instrumentalities or evidence of criminal acts exist at the place for which the warrant is requested. *Gates*, 462 U.S. at 238. The information was sufficient to establish probable cause.

Allen argues the information concerning the photographs stored as "frommrhyde6988" was stale and therefore could not be used to provide probable cause. The district court correctly rejected this claim. In its opinion, the district court recognized that the affidavit did not establish when the photographs were transferred by Allen to Mikowski. However, the court found that because Allen initiated use of his "Hello" account on December 6, 2006, that would have been the earliest date the photos could have been sent. The court then assumed, for purposes of analyzing the issue, the images were transferred at the first opportunity, on December 6, 2006. Therefore, the facts underlying the warrant were 18 months old on the date the warrant was issued. The district court found the information was not so stale as to render official belief in its adequacy unreasonable. We concur with the conclusion of the district court.

The amount of delay which will make information stale depends upon the particular facts of the case, including the nature of the criminal activity and the type of evidence sought. *Bastida v. Henderson*, 487 F.2d 860, 864 (5th Cir. 1973). As with other issues concerning probable cause, a magistrate's decision is given considerable deference in the absence of arbitrariness, and the magistrate is expected to act reasonably and use common sense. *Id.* at 863.

In this case, the magistrate could have reasonably concluded that the

pornographic images were still on the computer at Allen's home at the time the warrant was issued. This conclusion is reasonable given the nature of the evidence sought. In the affidavit submitted to the magistrate, the affiant said that the computer's ability to store images in digital form makes it an ideal repository for child pornography. Internet access permits a computer user to transport and download an image file to his own computer. Important to the staleness issue, the magistrate was advised that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the internet.

Agent Stone reported to the magistrate in his affidavit that because of the fact that Allen appears to have traded images depicting child pornography and engaged in chat sessions discussing the trade of child pornography, the agent believed Allen had a sexual interest in children. The agent went on to say that individuals who have a sexual interest in children or images of children often maintain their collection on a computer and maintain these collections for several years.

A number of courts have considered the issue of whether information in a child pornography case is stale for the purposes of determining whether there was probable cause for the issuance of a warrant. In *Riccardi*, 405 F.3d at 860-61, the Tenth Circuit considered whether a five-year-old Kinko's receipt found in an envelope with non-pornographic pictures was too stale to support probable cause for the issuance of a search warrant. The court explained that whether information is stale depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized. *Id*. The court went on to say that although the Kinko's receipt may have been five years old, it showed that the defendant had the desire and ability to convert Polaroid photographs of children to a digital format, which is a common means by which child pornographers distribute and exchange their materials. *Id*. While the

receipt was not the only evidence that supported probable cause, the receipt could be considered despite its age.  It was not "stale."  *Id.*

In *United States v. Frechette*,  583 F.3d 374 (6th Cir. 2009), the Sixth Circuit held that information presented to a magistrate judge regarding a suspect's purchase of a one-month subscription to a child pornography site was not stale though the purchase of the subscription occurred 16 months prior to the search. *Id.* at 378-79.  In reaching this conclusion, the court noted that the crime is generally carried out in the secrecy of the home and over a long period; therefore the same time limitations that apply to more fleeting crimes do not apply to child pornography cases.  *Id.* at 378.

In *United States v. Lacy*, 119 F.3d 742, 745 (9th  Cir. 1997), the Court upheld a search warrant based on information ten months old.  The court explained that information is not stale because the affidavit provided ample reason to believe pornography was in Lacey's apartment.  *Id.* at 745-46; *see also United States v. Paull*, 551 F.3d 516 (6th Cir. 2009) (information that the defendant subscribed to child pornography 13 months earlier was not stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (holding that "[t]he passage of more than three years from the acquisition of the evidence until the warrant application [did not] render[] the evidence stale" in a child pornography case); and *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2004) ("Information a year old is not necessarily stale as a matter of law."). Accordingly, we find that the district court did not err when it found the information was not stale.

Allen also claims there was not probable cause because the photographs of children referenced in the affidavit were not "lascivious" and therefore were not child pornography.  The district court applied the factors set forth in *United States v. Bouderau*, 250 F.3d 279, 282 n.2 (5th Cir. 2001) to analyze the lascivious nature of the photographs.  After doing so, the district court concluded

that it was reasonable for officials to believe that the photos were child pornography and rejected Allen's argument by expressly holding that the probable cause determination based on the lascivious nature of the photographs was well founded.

The court noted that the photos displayed children with the pubic area plainly exposed. One photo showed a girl in an unnatural pose who was fully nude in the setting of a hotel room. The other photo was entitled "11 very hot." The court noted that the girl, posing nude in front of a bed without clothing in thigh-high stockings, was suggestive. Given these facts, the court found it reasonable for officials to believe the photos were child pornography and the photos gave those officials probable cause to believe pornography would be found on Allen's home computer. *See United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (upholding a finding of probable cause based on, *inter alia*, the description of the images in the affidavit and stating that there was a fair probability that the images were "so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.") (internal quotation marks and citations omitted). The district court did not err in finding the description of the pictures supported the finding of probable cause.

Finally, Allen argues the district court erred in excluding the testimony of Nancy Piette, a private investigator, at the suppression hearing. Allen states in his brief that Piette would have testified that she reviewed the descriptions of the two photographs in the affidavit in support of the search warrant and she would have stated that the photographs are the same or very similar to photographs found in various books in libraries throughout the country.

Allen submits that the court erred in excluding the evidence because it was relevant. We disagree. Whether the photographs described in the affidavit were similar to other photographs Piette may have found is not relevant to either the issue of probable cause or good-faith. What was at issue was whether

the description of the images that was contained in the affidavit was sufficient to provide probable cause to believe child pornography would be located on Allen's computer. The district court did not err in excluding this testimony and the admission of the photographs. *See Hill*, 459 F.3d at 972 (evaluating probable cause based on the description of the images in the affidavit and not the images themselves).

For the foregoing reasons, the judgment of the district court is AFFIRMED.