# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 10, 2013

No. 12-30515

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

BRIAN RIGGINS, also known as Snag Riggins, also known as B. Riggins,

Defendant – Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CR-143-1

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Brian Riggins ("Riggins") was convicted on Count 1 for conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846, on Count 2 for possession with the intent to distribute cocaine hydrochloride and cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), on Count 3 for possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), on Count 4 for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and on Count 5 for possession

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30515

of a short-barreled shotgun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(i). He appeals his convictions and sentences. We AFFIRM the convictions, VACATE the sentences for Counts 3 and 5, and REMAND for resentencing.

## I

The investigation into Riggins's drug-related activities began when a confidential informant ("CI") tipped Jefferson Parish Sheriff Lieutenant Daniel Jewell ("Jewell"), informing Lieutenant Jewell of the nature of Riggins's drug-dealing activities and supplying Jewell with a description of Riggins and Riggins's vehicle. Lieutenant Jewell had worked with this CI for about four years, a cooperation that resulted in thirty investigations, nineteen successful prosecutions, and the convictions of twenty-three defendants. As a result of those cases, law enforcement officials had seized sizeable quantities of drugs, firearms, and illicit money. Based on the CI's tip, Lieutenant Jewell ran a background check on Riggins that revealed Riggins had two prior cocaine-related convictions. The CI then told Jewell he and a relative drove to Riggins's house, which the officers later ascertained to be Riggins's girlfriend's house and where Riggins actually lived. The relative went into Riggins's house then returned to the car, where the CI was waiting. The relative told the CI that Riggins had "bricks" of cocaine. Jewell then decided to conduct surveillance on Riggins's house.

The next day, Lieutenant Jewell, along with other officers, surveilled Riggins's house. A man matching the CI's description of Riggins arrived with a child in a vehicle matching the CI's description of Riggins's vehicle, and the two entered the house. Shortly afterward, Lieutenant Jewell decided to leave the

2

No. 12-30515

scene to prepare a search warrant for the residence. Riggins then left the house alone and began driving away, tailed by the officers, as Jewell was preparing the search warrant. Jewell ordered the officers at the scene to stop Riggins, so they pulled Riggins over. They observed Riggins make movements between his driver's seat and the center console, so they ordered Riggins out of the vehicle and placed him in handcuffs. Two officers looked through the driver's side window and observed what they believed to be a quantity of cocaine between the driver's seat and the center console.

The officers asked Riggins where he resided and whether he was driving from his home. Riggins gave an address where his father resided and claimed he was coming from there instead of the address where he actually resided, his girlfriend's house. The officers took Riggins's keys. They led a drug-sniffing dog around the vehicle, and the dog indicated the presence of drugs at the driver's side door. Lieutenant Jewell, who was still drafting the search warrant for the residence, then decided to draft a second warrant for the vehicle.

Some officers then went to Riggins's girlfriend's house in anticipation of the search warrant. They knocked on the door, were met by a 13-year-old female, and performed a security sweep inside the house. Riggins's girlfriend then arrived at the house and told the officers Riggins slept there every night and had a key. The officers tested Riggins's key, and it worked on the door. At around the same time, Lieutenant Jewell went to the scene of the vehicle with the approved and signed search warrants in hand. He presented the vehicle search warrant to Riggins, and the drug-sniffing dog was allowed into the vehicle. The officers recovered cocaine from the area between the driver's seat

3

No. 12-30515

and the center console. The officers arrested Riggins and took him to the detective bureau.

Lieutenant Jewell then drove to the residence and executed the other search warrant with other officers. Inside, they found a drug ledger in the kitchen, two digital scales and about nine kilograms of powder cocaine in the garage, about $49,000 in cash in a drawer in the master bedroom, about $9000 in cash and a .38 caliber semiautomatic handgun in the bedroom cabinet, a .22 caliber Ruger on the headboard of the bed, a 12 gauge shotgun in the bedroom closet, and a .410 caliber short-barrel shotgun next to the bed. The two handguns were loaded.

At the detective bureau, officers read Riggins his *Miranda* rights and asked if Riggins wanted to make a statement. Riggins said he did not want to make a recorded statement, but did want to state that everything found in the house belonged to him, not his girlfriend, and that he could not get a well-paying job and did what he had to do to make a living.

Riggins was indicted and filed a motion to suppress evidence from the vehicle and the house, claiming the officers lacked reasonable suspicion to stop the vehicle and probable cause to obtain the warrants. The district court found the CI credible because of the CI's history and because the CI's information about the vehicle Riggins used to transport drugs and about Riggins's actual address was corroborated by the surveillance. Based on these findings, the district court found the officers had reasonable suspicion to stop the vehicle and the warrants were supported by probable cause; therefore, the district court denied the motion.

No. 12-30515

During Riggins's trial, the district court conducted a *James* hearing outside the presence of the jury in order to determine whether three co-conspirator conversations recorded by wire tap and made by three individuals, Troy Williams, Rodney Walker, and Kevin Phillips, were admissible under Federal Rule of Evidence 801(d)(2)(E). *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc); *see also Bourjaily v. United States*, 483 U.S. 171, 180–81 (1987). The district court found a preponderance of the evidence indicated the existence of a conspiracy involving Riggins. Accordingly, the district court admitted the co-conspirator statements. Another co-conspirator, Mark Houston, testified at Riggins's trial about his involvement in dealing drugs with Riggins. Riggins was ultimately convicted on all five counts.

At sentencing, Riggins objected to the consecutive sentences for Count 3, possession of firearms in furtherance of a drug trafficking crime, and Count 5, possession of a short-barreled shotgun in furtherance of a drug trafficking crime. The district court found Count 5 second or subsequent to Count 3 because they involved different firearms and overruled Riggins's objection. The district court sentenced Riggins to life imprisonment for each of Counts 1 and 2, 120 months for Count 4 to be served concurrently with the sentences for Counts 1 and 2, 60 months for Count 3 to be served consecutively to the sentences for Counts 1, 2, and 4, and 300 months for Count 5 to be served consecutively to all the other sentences. Riggins timely appealed.

## II

Riggins appeals his convictions and sentences, asserting 6 grounds: 1) the officers unconstitutionally searched the vehicle and house; 2) the district court erred in admitting evidence of a conspiracy; 3) there was insufficient evidence

No. 12-30515

for conviction on Counts 3 and 5, which relate to the possession of firearms in furtherance of a drug trafficking crime; 4) he was subjected to double jeopardy by being convicted on both Counts 3 and 5; 5) the conviction on Count 5, relating to possession of the short-barreled shotgun, was not second or subsequent to the conviction on Count 3, relating to possession of firearms; and 6) the life sentences on Counts 1 and 2 violate the Eighth Amendment and due process. The Government concedes Riggins's related fourth and fifth points, and his remaining points lack merit.

## A

Riggins asserts the district court erred by denying his motion to suppress because the officers lacked reasonable suspicion to stop his vehicle or probable cause to arrest him pending completion of the search warrants. Riggins also asserts the information Lieutenant Jewell incorporated into the applications for the search warrants was gathered pursuant to this illegal arrest and an illegal search of the house and constituted an intentional fabrication. Therefore, Riggins maintains the officers were not justified in relying on the warrants. We hold the district court did not err by denying the motion to suppress evidence gathered from the vehicle stop or the execution of the search warrants.

In reviewing the denial of a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). "'A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole. Further, the evidence presented at a pre-trial hearing on a motion to suppress is viewed in the light most favorable to the prevailing party.'" *United States v. Rodriguez*, 564 F.3d 735, 740 (5th Cir. 2009) (quoting *United States v. Jacquinot*, 258 F.3d 423, 427

(5th Cir. 2001)). "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Montes*, 602 F.3d 381, 384 (5th Cir. 2010). "[F]ailure to raise *specific issues or arguments* in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal." *Unites States v. Pope*, 467 F.3d 912, 918–19 (5th Cir. 2006).

First, we hold the officers did have reasonable suspicion to stop Riggins's vehicle. The district court made a factual finding that the CI was credible based on the CI's history of providing Lieutenant Jewell with important information and the surveillance's corroboration of certain aspects of the CI's tips. The CI had informed Lieutenant Jewell that his relative came out of Riggins's house with drugs and told the CI that Riggins had large quantities of drugs inside, and the CI had described the vehicle that Riggins used to deliver drugs. Contrary to Riggins's assertion that the stop was illegal because it was based only on pending search warrants, the district court made this factual finding of the CI's credibility, a finding that is not clearly erroneous, in support of the legal conclusion that the officers had reasonable suspicion for the stop. As for Riggins's related assertion that the detention was an arrest without probable cause in violation of *Michigan v. Summers*, 452 U.S. 692, 697 (1981), the issue is waived because Riggins failed to raise it in the pre-trial suppression proceedings. *Pope*, 467 F.3d at 918–19. Therefore, the district court did not err by denying the motion to suppress based on the stop of the vehicle.

Second, we hold the officers were justified in relying on the warrants when seizing evidence from the vehicle and the house. We determine whether a

No. 12-30515

seizure pursuant to a search warrant violates the Fourth Amendment using a two-step inquiry. *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010). First, we ask if the good-faith exception applies to the exclusionary rule; if so, we affirm the denial of the motion to suppress. *Id.* The good faith exception asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984)). "[T]he evidence obtained during the search is admissible . . . even if the evidence in the affidavit on which the warrant was based was not sufficient to establish probable cause." *Allen*, 625 F.3d at 835 (citations omitted). Second, and only if the good-faith exception is inapplicable, we ask "whether the magistrate issuing the warrant had a 'substantial basis for believing there was probable cause for the search.'" *Id.* (quoting *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000)).

Here, the good-faith exception applies, so we need not reach the determination of whether there was a substantial basis for the magistrate to believe there was probable cause for the search. *Allen*, 625 F.3d at 835. The information included in the warrant applications that Riggins complains about, namely the cocaine the officers saw through the vehicle window and the fact that his key worked on his girlfriend's house's door, was gathered properly. As discussed above, the officers had reasonable suspicion to stop the vehicle, so their observation of the cocaine inside could be included in the application. The officers tested the key only after Riggins's girlfriend confirmed that Riggins lived in the house. In addition, the district court found the information provided by the CI was credible. All these factors support the officers's good-faith reliance on the search warrants, and Riggins does not provide support for his speculative

No. 12-30515

claim that the officers lied in the applications.  Therefore, the district court did not reversibly err by denying the motion to suppress evidence gathered from the execution of the search warrants.

**B**

Riggins raises two issues related to his conviction for conspiracy.  First, he asserts the district court erred in admitting the co-conspirator statements made by Williams, Walker, Phillips, and Houston.  As to the Houston testimony, he asserts the scope of the *James* hearing was limited to statements by Williams, Walker, and Phillips involving a conspiracy between Riggins and those three, so any evidence from Houston that might show a separate conspiracy between Riggins and Houston was inadmissible.  As to the remaining testimony, he asserts the evidence at the *James* hearing did not support a finding of a conspiracy between Riggins and Williams, Walker, and Phillips, so the testimony of Williams and Walker regarding the co-conspirator statements should not have been admitted.  Because Riggins did not object to the admission of the co-conspirators's testimonies at trial, we review those admissions for plain error. *United States v. Williams*, 620 F.3d 483, 488–89 (5th Cir. 2010); *see* FED. R. CRIM. P. 52(b).

Second, Riggins asserts the evidence could show at most only a buyer-seller relationship between Riggins, as the seller, and any or all of the four others, as the buyers, and was therefore legally insufficient to support the verdict's conspiracy finding.  Riggins moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, so we review Riggins's sufficiency challenge de novo, asking "whether, viewing all the evidence in the light most favorable to the verdict, a rational jury could have found that the evidence

established the elements of the offense beyond a reasonable doubt." *United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009) (internal quotation marks omitted).

Riggins fundamentally misunderstands the purpose of a *James* hearing in his challenge to the admission of Houston's testimony. A *James* hearing concerns only "statement[s] made by one member of a conspiracy during the course of and in furtherance of the conspiracy" for purposes of Federal Rule of Evidence 801(d)(2)(E) that are otherwise inadmissible hearsay (unless admissible under a different Federal Rule of Evidence). *James*, 590 F.2d at 577. Here, the only statements that the *James* hearing evaluated were the recorded phone conversations between Williams, Walker, and Phillips concerning the conspiracy with Riggins. Houston did not testify about otherwise inadmissible statements. Therefore, the district court did not commit plain error by admitting Houston's testimony.

Riggins challenges the admission of the testimonies of Williams and Walker about their recorded conversations with Phillips on the basis that they establish only a buyer-seller relationship, which is the same basis for his challenge to the sufficiency of the evidence addressed below. The buyer-seller exception "prevents a single buy-sell agreement, which is necessarily reached in every commercial drug transaction, from automatically becoming a conspiracy to distribute drugs." *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012) (en banc). However, "one becomes a member of a drug conspiracy if he *knowingly participated in a plan to distribute drugs*, whether by buying, selling, or otherwise." *Id.* (internal quotation marks and alterations omitted). In the recorded conversations Williams said he had bought powder cocaine from

No. 12-30515

Riggins about twice a month in half-kilogram quantities during the fall of 2008 and he had bought a half-kilogram from Riggins the previous day. After considering these statements and other evidence, such as the seized cocaine, the district court determined the Government established the existence of a conspiracy by a preponderance of the evidence and admitted the evidence. Because the statements reference multiple transactions and the existence of the conspiracy was supported by other evidence, the buyer-seller exception is inapplicable and the district court did not commit plain error by admitting the testimonies. *See Delgado*, 672 F.3d at 333.

In addition, the Houston testimony alone constitutes sufficient evidence for a rational jury to convict Riggins for conspiracy beyond a reasonable doubt. *Ollison*, 555 F.3d at 158. To prove conspiracy, the Government must show three elements: "(1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy." *United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003) (internal quotation marks omitted). "As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution of leniency, may be constitutionally sufficient evidence to convict." *Id.* (internal quotation marks omitted).

Riggins asserts his relationship with Houston falls under the buyer-seller exception. We disagree. Here, a rational jury could find the Government met its burden with the Houston testimony. Houston testified that he and Riggins sold large quantities of drugs together, "cooked" drugs together, and counted drug proceeds together. The jury was entitled to credit this testimony, which is

No. 12-30515

clearly not "factually insubstantial or incredible." *Turner*, 319 F.3d at 721. Indeed, Riggins admits in his briefing that the Houston testimony was "devastating." Therefore, we hold there was sufficient evidence to support the verdict's conspiracy finding.

## C

Riggins challenges the sufficiency of the evidence supporting conviction on Counts 3 and 5. Count 3 alleges Riggins possessed a firearm in furtherance of a drug trafficking crime, and Count 5 alleges Riggins possessed a short-barreled shotgun in furtherance of a drug trafficking crime; both are in violation of 18 U.S.C. 924(c). Riggins asserts the presence of the firearms, including the short-barreled shotgun, in the house from which he dealt the drugs is not sufficient to support a finding that the firearms were possessed *in furtherance* of a drug trafficking crime. As stated above, we review Riggins's sufficiency challenge de novo, asking "whether, viewing all the evidence in the light most favorable to the verdict, a rational jury could have found that the evidence established the elements of the offense beyond a reasonable doubt." *Ollison*, 555 F.3d at 158 (internal quotation marks omitted).

In *United States v. Ceballos-Torres*, we explained our evaluation of gun possession in this type of situation as follows:

> Some factors that would help determine whether a particular defendant's possession furthers, advances, or helps forward a drug trafficking offense might include: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

No. 12-30515

> These factors help distinguish different types of firearm possession. For example, a drug dealer whose only firearms are unloaded antiques mounted on the wall does not possess those firearms "in furtherance" of drug trafficking. Nor will a drug trafficker who engages in target shooting or in hunting game likely violate the law by keeping a pistol for that purpose that is otherwise locked and inaccessible.

218 F.3d 409, 414–15 (5th Cir. 2000).

Here, the evidence is sufficient for a rational jury to find Riggins owned the firearms in furtherance of a drug trafficking crime. First, the "type of drug activity" at issue is significant because it involved a substantial amount of cocaine at the house. *Id*. at 414. Second, the "accessibility of the firearm[s]" weighs against Riggins because none were "locked and inaccessible;" rather, most were within reaching distance of Riggins's bed. *Id*. at 414–15. Third, the "type of weapon[s]" weighs against Riggins; none are "antiques mounted on the wall" or similarly benign, and the short-barreled shotgun is particularly dangerous. *Id*. Fourth, "whether the weapon[s are] stolen" does not weigh in favor of either side because the record does not resolve the issue. *Id*. at 415. Fifth, "the status of the possession (legitimate or illegal)" weighs against Riggins because Riggins was convicted for being a felon-in-possession in Count 4 (a conviction he does not challenge on appeal). *Id*. Sixth, the two handguns were loaded. *Id*. Seventh, the guns were found in the bedroom, in close "proximity to . . . drug profits." *Id*. Eighth and last, nothing in the "time and circumstances under which the gun[s are] found" indicate Riggins may have had a legitimate purpose for possession; rather, they were found as a result of a search warrant based on illegal drug activity. *Id*. These factors together constitute more than

13

sufficient evidence for a rational jury to find Riggins owned the firearms in furtherance of a drug trafficking crime.

## D

Riggins challenges the consecutive sentences for Counts 3 and 5. Riggins relies on two grounds: 1) two convictions for firearm possession based on the same underlying drug trafficking offense violates double jeopardy principles; and 2) the conviction for Count 5 was not "second or subsequent" to the conviction for Count 3 because the two stem from the same underlying event, so the sentencing enhancement in § 924(c)(1)(C), which resulted in the 300-month sentence for Count 5, should not apply.

The Government concedes Riggins's first point and we agree. In *United States v. Privette*, we held "that to avoid violating double jeopardy principles each firearms offense must be sufficiently linked to a separate drug trafficking offense to prevent two convictions under § 924(c) on the same drug offense." 947 F.2d 1259, 1262–63 (5th Cir. 1991). Here, both firearms offenses were linked to the same drug trafficking offense charged in Count 2, so multiple punishment is improper. *Id*. at 1263. Even though Count 5 is linked to the conspiracy charged in Count 1 in addition to the substantive offense in Count 2, "we cannot determine whether the jury based both convictions on the [same count]. If the jury convicted [Riggins] twice for using firearms [based on Count 2, Riggins] would be doubly punished for the same crime." *Id*.

Because the same underlying drug trafficking offense can support only one conviction for possession of firearms under § 924(c)—either Count 3 or Count 5—we need not address whether Count 5 was "second or subsequent" to Count 3. The sentencing enhancement is applicable only to multiple convictions in any

No. 12-30515

event. "The proper remedy for multiplication of punishment is to vacate the sentences on all the counts and remand with instructions that the count elected by the government be dismissed." *Id.* Here, the proper remedy is to vacate the sentences for Counts 3 and 5 and remand with instructions for the district court to vacate the conviction for and dismiss the count elected by the Government and resentence Riggins on the remaining count.

### E

Lastly, Riggins asserts his life sentences for Counts 1 and 2 are in violation of due process principles. Specifically, Riggins challenges the district court's finding at sentencing that he had committed two prior drug felonies, as well as the district court's description of the two prior convictions as "serious drug offenses." On these bases, Riggins asserts the district court should not have given him the statutorily-mandated life sentences for offenders with two prior felony drug offenses under 21 U.S.C. § 841(b)(1)(A). Additionally, Riggins asserts he is not a career offender under the Sentencing Guidelines.[1]

We review sentencing for significant procedural errors first, including whether the district court "select[ed] a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). "When there are no procedural errors, this court will then 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard' and will 'take into account the totality of the circumstances.'" *United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011) (quoting *Gall*, 552 U.S. at 51).

---

[1]Riggins includes a general assertion that his life sentences violate the Eighth Amendment, but he concedes this issue is foreclosed by precedent. *See Harmelin v. Michigan*, 501 U.S. 957, 995–96 (1991) (holding life sentences do not violate the Eighth Amendment).

15

No. 12-30515

First, Riggins challenges the district court's finding that he was the same "Brian Riggins" who had committed the prior two felonies produced by the Government. Under 21 U.S.C. § 851, the Government must prove beyond a reasonable doubt that Riggins committed the prior felonies. At first, the Government and the district court mistakenly thought the Government's burden was to show clear and convincing evidence. The district court later stated, however, "Even if it wasn't by clear and convincing, and if the burden was beyond a reasonable doubt, the Court also finds that the burden has also been established with beyond a reasonable doubt, in my opinion." Therefore, the district court did not commit procedural error because it made the same finding in the alternative using the correct standard.

Riggins asserts the Government did not, in fact, show that he committed the prior felonies beyond a reasonable doubt because the parole officer testifying to his identity needed his memory refreshed by a photograph and the prior convict used different aliases than the ones Riggins used in this case. The district court based its finding on the testimony of the probation officer assigned to supervise the prior convict. After his memory was refreshed by a photograph in the case file of "Brian Riggins," the parole officer testified that he had no doubt Riggins was the person who committed the two prior felonies. The district court credited this testimony and found the different aliases were ultimately immaterial to the identity issue. This finding was not based on "clearly erroneous facts," but rather on the testimony of the supervising probation officer, so the district court did not procedurally err.

Second, Riggins asserts the district court erred in mischaracterizing his prior convictions as "serious drug offenses." Riggins asserts his prior convictions

were not "serious" under the definition in 18 U.S.C. § 3559(c)(2)(H)(ii).  For purposes of the mandatory minimum under 21 U.S.C. § 841(b)(1)(A), however, prior convictions need only be "felony drug offense[s];" seriousness is not a factor. Therefore, Riggins's assertion lacks merit.

As for substantive reasonableness, Riggins has not provided any support for his assertion that the district court abused its discretion when it imposed the mandatory minimums.  Additionally, we do not address Riggins's contention that he is not a career offender for purposes of Counts 1 and 2 because the life sentences are statutorily mandated independent of the Sentencing Guidelines. 21 U.S.C. § 841(b)(1)(A).  Therefore, the district court did not reversibly err in imposing life sentences for Counts 1 and 2.

## III

For these reasons, we AFFIRM the convictions, VACATE the sentences for Counts 3 and 5, and REMAND for resentencing.  On remand, the district court will VACATE the conviction for and DISMISS the count elected by the Government and resentence Riggins on the remaining count.