United States Court of Appeals
Fifth Circuit

**F I L E D**

February 25, 2005

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-40557

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JERRY LEONARDO VALENTINE,

Defendant-Appellant

———————————————

Appeal from the United States District Court
for the Eastern District of Texas

———————————————

Before HIGGINBOTHAM, SMITH, and
BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jerry Valentine appeals his conviction, under 18 U.S.C. § 922(n), of receiving a firearm that traveled in interstate commerce while he was under indictment for a felony. We conclude that a Texas state defendant who is on probation pursuant to a deferred adjudication of a felony charge remains, as a matter of law, under indictment. Based on that conclusion, and because there is no merit to Valentine's other issues on appeal, we affirm.

I.

On January 2, 2003, Detectives Paul Martinez and Chris Jones received an anonymous tip that there was drug-related activity at an apartment complex. Later that day, as they approached the complex, they saw two indi-

viduals who appeared to be exiting apartment 1412. Later identified as Valentine and Tywona Harvey, they entered a parked car that Jones and Martinez approached, identifying themselves as police officers. Martinez asked Valentine to step out of the car, at which point he patted down Valentine but found no weapons or contraband. At the same time, Jones patted down Harvey and discovered marihuana in his pocket; Harvey, however, was not arrested at that time.

Martinez explained that they were investigating a tip regarding narcotics activity involving apartment 1412. Valentine admitted that he and his girlfriend, Crystal Taylor, resided in that apartment, but he was leaving for his mother's house because the couple was having a dispute. Valentine, as well as Taylor (who had come outside while all of this was transpiring), gave Martinez consent to search their apartment, at which time, Martinez, Jones, Taylor, and Harvey went inside the apartment. Jones searched the apartment, yet found no evidence of drugs or contraband.

What happened next is a matter of some debate among Valentine, his witnesses, and the detectives. The district court found the detectives' account more credible, a decision on which it denied a suppression motion. According to the government, Martinez next asked whether Valentine had any illegal belongings in his car, to which Valentine responded in the negative. Accordingly, Martinez inquired whether Valentine had any problem with the vehicle's being searched; Valentine said he did not. Martinez testified at the suppression hearing that Jones proceeded outside, alone, to search Valentine's belongings in

the car, and turned up a handgun.[1]

Valentine indicated that the gun was his and that he had purchased it in the previous month or two. Although Martinez did not immediately recognize it as an offense, he noticed that there were no serial numbers on the gun. Martinez decided to take the gun and have police technicians attempt to retrieve the serial numbers from it. Martinez told Valentine that if the gun checked out (*i.e.,* did not turn out to be stolen), it would be returned. Martinez subsequently learned that it was illegal to possess a firearm without serial numbers.

Before this incident, in January 2002, Valentine had been indicted for theft under Texas law and received a five-year deferred adjudication. Consequently, after the January 2003 incident, he was convicted under § 922(n) of receiving a firearm while under indictment.[2]

At trial, Martinez gave testimony that varied somewhat from his narrative at the sup-

---

[1] Valentine claims he was never asked for consent for the vehicle to be searched. Harvey testified that the detectives asked him for consent but that he told them he could not consent because it was not his vehicle. Harvey testified that one of the detectives then searched the vehicle without consent. As noted above, the court found the detectives more credible and concluded that consent was given.

Valentine alternatively argues that any consent was involuntary. Following *United States v. Phillips*, 664 F.2d 971, 1023-24 (Former 5th Cir. Dec. 1981), the district court held that under the totality of the circumstances, Valentine's consent was voluntary.

[2] Valentine was acquitted of one count of possessing a firearm with an obliterated serial number. *See* 18 U.S.C. § 922(k).

pression hearing. Specifically, he indicated that Harvey had, in fact, accompanied Jones outside for the search of the vehicle. Based on this inconsistency, Valentine requested that the court reconsider his motion to suppress, and later moved for a new trial based in part on Martinez's testimony. Both motions were denied.

The other basis for Valentine's motion for new trial was the admission of testimony by ATF Special Agent Joe Patterson that Valentine was, in his opinion, under indictment at the time the gun was discovered. The district court also rejected the notion that this was improper opinion testimony, and further concluded that any error was harmless because Valentine was under indictment as a matter of law.

## II.

Valentine urges that the district court wrongfully refused to suppress the firearm found by the police as well as any statements deriving from its discovery. Valentine must convince us that the court committed clear error with respect to its factual determinations. *See Muñoz*, 150 F.3d at 411. According to Valentine, the determination that he gave consent and did so freely, under the totality of the circumstances, constitutes such clear error. We disagree.

In *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997), we held that the totality of the circumstances under which the voluntariness of consent is to be reviewed includes

(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

All six factors are relevant, yet none is dispositive or controlling. *Id.*

The district court found that, although Valentine was initially stopped and frisked without reasonable suspicion in contradiction of *Terry v. Ohio,* 392 U.S. 1 (1968), there was no evidence of coercive police tactics. This determination is illuminating not just of the second above-listed factor, but indicated that Valentine was voluntarily present and not in custody. There was no evidence that he was restrained in any waySSin fact, Harvey and Taylor testified that they felt free to leave.

Additionally, the evidence indicated that Valentine was cooperative with the police and their investigation. For example, it is not disputed that he voluntarily gave consent for the search of his apartment. Thus, the third factor also weighs in favor of the government.

Based on Valentine's education and his past experiences with the criminal justice system, the court further found that his education and intelligence did not point to a finding that his consent was coerced. Lastly, because the detectives' entire encounter with Valentine had been related to reports of drug activity, the court felt that Valentine did not believe incriminating evidence would be found in the vehicle.

The only factor that pointed in Valentine's favor, according to the district court, was that he was not notified of his right to refuse consent to the search. Nevertheless, the lack of such a notification has never been held to require a finding of involuntariness. *See, e.g.,*

3

*United States v. Solis,* 299 F.3d 420, 438 (5th Cir. 2002).

Although reasonable jurists might reach different conclusions based on the evidence presented, we cannot say that the voluntariness conclusion was clearly erroneous. The only argument Valentine puts forth that appears to have any substantial validity is his claim that the court erred in determining that he did not believe any incriminating evidence would be found. Valentine contends that any defendant who places an illegal firearm in a vehicle would obviously realize that it would be discovered if the vehicle is searched by detectives seeking evidence of narcotics.

The government answers by pointing out that there is nothing in the record to indicate that Valentine knew it was illegal to possess a firearm without serial numbers. This reasoning is unconvincing. Just because the record does not reflect this fact does not mean Valentine was not well aware of it.

The absence, therefore, of anything in the record indicating that Valentine was aware that possessing the gun was a crime is far from conclusive proof that he did not believe incriminating evidence would be found in the car. The government's argument also completely ignores the possibility that Valentine was aware that his possession of a firearm constituted a violation of § 922(n) in light of his deferred adjudication.

Nevertheless, even if the district court erred with respect to that factor, the weight of the evidence is certainly substantial enough to justify the determination, under the totality of the circumstances, that consent was given voluntarily. Viewing the evidence in the light most favorable to the government, as we must,[3] there is no clear error.

III.

As noted above, Martinez testified at the suppression hearing that Jones left the apartment alone to conduct the search of Valentine's vehicle. At trial, however, Martinez agreed with defense witnesses that Harvey left with Jones during the search of the car.

Based on this inconsistency, Valentine moved the court to reconsider its decision on his suppression motion, and later moved for a new trial. Both requests were denied. Valentine contends that the decision not to grant a new trial, pursuant to Federal Rule of Criminal Procedure 33,[4] was an abuse of discretion. *See Solis,* 299 F.3d 441-42. According to Valentine, the inconsistency in Martinez's testimony was sufficient to undermine his credibility with respect to his testimony at the suppression hearing. Therefore, goes the argument, it was unjust to allow the trial to go forward based on evidence that should have been suppressed, and testimony of a witness whose credibility the court knew to be suspect.

In response to Valentine's motion, the district court, relying on *Unites States v. Robinson*, 110 F.3d 1113, 1117 (5th Cir. 1997), noted that unless the weight of the evidence is heavily against the verdict, it is not a miscarriage of justice to let the verdict stand. Because all Valentine relied on was the slight change in Martinez's testimony, the court found that Valentine could not "cast sufficient doubt on Martinez's credibility as to change

---

[3] *See Solis*, 299 F.3d at 435-36.

[4] "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." FED. R. CRIM. P. 33.

4

the Court's credibility determination" and entitle him to a new trial.

The district court was able to observe the demeanor of the witness at the suppression hearing and trial and thus was in a unique position to gauge credibility. Additionally, the grant of a new trial "should be exercised with caution . . . [and] should be invoked only in exceptional cases." *United States v. Scroggins*, 379 F.3d 233, 239 (5th Cir. 2004), *vacated on other grounds*, 2005 U.S. LEXIS 1288 (U.S. Jan. 24, 2005). It was therefore no abuse of discretion to deny a new trial.

## IV.

Valentine's most substantial argument is that the evidence is insufficient to establish, beyond a reasonable doubt, that his conduct constituted a violation of § 922(n). Such a conviction requires a finding that the defendant received a firearm shipped in interstate commerce[5] while he was "under indictment for a crime punishable by imprisonment for a term exceeding one year . . . ." 18 U.S.C. § 922(n). As noted above, in January 2002 Valentine was indicted for theft and received five years' deferred adjudication. The relevant question, therefore, is whether the deferred adjudication is tantamount to being "under indictment."

Denials of motions for judgment of acquittal are reviewed *de novo*, using the same standard as did the district court, *i.e.,* whether any rational trier of fact could have found the essential elements of the offense beyond reasonable doubt. *United States v. Daniel*, 957 U.S. 162, 164 (5th Cir. 1992). Here, however, the question is one of pure lawSSwhether Valentine was "under indictment" as a result of his

---

[5] The existence of an interstate nexus is not challenged in this case.

deferred adjudication in Texas court. That question is reviewed *de novo*. *United States v. Bellew*, 369 F.3d 450, 452 (5th Cir. 2004). If, as a matter of law, a Texas deferred adjudication is equivalent to remaining under indictment, then no reasonable jury could have found otherwise, and the evidence was sufficient. If, as a matter of law, the opposite is true, no conviction could stand.

We have yet to rule definitively on this question. In an analogous situation, we held that Texas's deferred adjudication scheme leaves a defendant with a "pending charge" such that he is not qualified to serve as a juror because he currently has "a charge pending against him for the commission" of a felony. *United States v. Bishop*, 264 F.3d 535, 555 (5th Cir. 2001) (citing 28 U.S.C. § 1865-(b)(5)). Similarly, we held that a Texas deferred adjudication leaves a defendant without an adjudication of guilt or "conviction" under Federal Rule of Evidence 609. *See United States v. Hamilton*, 48 F.3d 149, 153 (5th Cir. 1995). Consequently, a deferred adjudication does not subject a witness to impeachment with the use of a prior "conviction." *Id.* Based on these precedents, the government argues that lacking any final disposition of his case, Valentine remains "under indictment" for the entire term of his deferred adjudication.

In *United States v. Hill*, 210 F.3d 881, 883-84 (8th Cir. 2000), the court reached a different conclusion, considering Missouri's suspended sentencing scheme. Just as in Texas, the Missouri system requires that the defendant plead guilty and is then given a suspended sentence. The court held that, because the purpose of an indictment is to give notice of the charges, the function of the indictment is satisfied after a guilty plea, so the indictment is extinguished.

The question whether Valentine is "under indictment" for purposes of § 922(n) is one of federal law. Although the statute does not explicitly define what it means to be "under indictment," in situations in which "neither Congress nor the Constitution has provided a rule of decision for the resolution of a federal question case that is properly within the subject-matter jurisdiction of the federal courts . . . it can be inferred from congressional or constitutional intent that the federal courts should supply the necessary rule of decision by pronouncing common law to fill the interstices of a pervasively federal substantive framework." 19 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4514, at 467 (1996). In such cases, we may reference, and find persuasive, state law in crafting federal common law to fill the voids in a comprehensive federal scheme. *See id*; *see also Hill*, 210 F.3d at 883-84.

Consequently, *Hill*, in addition to not being binding authority, dealt with a different questionSSthat is, it examined Missouri's system, not Texas's. One may therefore be under indictment for purposes of § 922(n) while being subject to deferred adjudication in Texas, and yet be free from indictment were the defendant under deferred adjudication in Missouri. The differences in those respective states' systems and the precedents dealing with them consequently yield different, yet not contradictory, results.

Though the two systems are fairly similar, we operate under the binding authority of *Bishop* and *Hamilton*, which conclude that Texas's deferred adjudications leave a charge pending against the defendant. It would be incongruous, to say the least, to hold that Valentine is not under indictment and thus entitled to receive a firearm, but at the same time is barred from serving on juries and is immune to impeachment based on his state felony charge.

Under Texas law, a defendant must challenge a deferred adjudication at the time it is entered, rather than waiting until after it is revoked. *See Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). Based on this proposition, Valentine posits that Texas law deems a deferred adjudication final, and by implication, removes the defendant from under an indictment. But, as the government points out, "what the Court of Criminal Appeals sought in *Manuel* was to avoid giving a defendant two bites at the apple or two chances to appeal matters regarding the validity of the order deferring adjudication." *Webb v. State*, 20 S.W.3d 834, 836 (Tex. App.SSAmarillo 2000, no writ). *Manuel* did not conclusively hold that a deferred adjudication renders the indictment null as a matter of Texas law.

V.

Valentine avers that the district court committed reversible error by admitting, over objection, Patterson's testimony that Valentine's deferred adjudication rendered him "under indictment" for purposes of § 922(n). Evidentiary decisions are reviewed for abuse of discretion and are subject to the harmless error rule. *Bishop*, 264 F.3d at 546.

In light of the foregoing discussion, this question is moot: Because Valentine was under indictment as a matter of law, the admission of any testimony regarding that question, even if erroneous, was harmless. Because Miller was under indictment, no reasonable jury could have found contrary to Patterson's testimony.

AFFIRMED.