# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 8, 2012

No. 11-10112

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOHN PATRICK NEWTON, also known as J.P.,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CR-103-1

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

John Patrick Newton appeals following his conditional guilty plea to conspiracy to distribute marijuana, maintaining a drug-involved premises, possession of marijuana with intent to distribute, and money laundering conspiracy. Newton reserved his right to appeal the district court's denial of his motion to suppress evidence that was obtained from multiple locations through the execution of search warrants. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10112

Newton contends on appeal that a series of searches conducted by police pursuant to search warrants was preceded by a Fourth Amendment violation when an officer illegally peered through a one-inch gap between a closed blind and his window frame.  He contends that officers obtained the initial warrant to search the apartment based on this violation, which also tainted subsequent warrants to search his car, his cell phones, a guest room where he was staying, and his home in California.

Following a denial of a suppression motion, we review the district court's factual findings for clear error and its legal conclusions *de novo*.  *United States v. Allen*, 625 F.3d 830, 834 (5th Cir. 2010).  The evidence is viewed in the light most favorable to the Government as the prevailing party.  *Id.*  We typically apply a two-step process to review the district court's denial of a motion to suppress evidence obtained from a search warrant, asking first whether the police objectively relied in good faith on the warrant.  *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002); *see United States v. Leon*, 468 U.S. 897, 919–20, 104 S. Ct. 3405, 3419 (1984).  If the good-faith exception to the exclusionary rule applies, the inquiry is ended.  *Cavazos*, 288 F.3d at 709.  If the exception does not apply, we determine whether there was nevertheless a substantial basis for the magistrate judge to find probable cause.  *Id.*

Newton first challenges the search of Unit 1032 at the Winstead apartment complex.  He argues that Officer Garza violated the Fourth Amendment by peeking through the closed blind and observing him handling large bags of marijuana.  He argues that Officer Carstarphan compounded the violation by falsely or recklessly stating in the warrant application that Officer Garza had been standing on a walkway directly outside the apartment looking through an open window blind.  He contends that the good-faith exception to the warrant requirement is therefore inapplicable.  Newton essentially contests the warrant based on two separate grounds: (1) the inclusion in the warrant

2

affidavit of false statements about where Garza was located and how he looked through the window, and (2) the inclusion in the affidavit of what Garza saw, i.e. Newton handling the marijuana.

As for the first ground, we agree with the district court's analysis that Officer Carstarphan did not intentionally, or in reckless disregard for the truth, include in the warrant affidavit the incorrect statement that Garza was standing on a walkway looking through an open blind. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978) (providing that intentional or reckless statements must be excised from warrant affidavit, and evidence must be suppressed if remaining information in affidavit fails to establish probable cause). As noted by the district court, Officer Carstarphan was not on the scene and relied on a description of the events from Officer Garza via telephone when preparing the affidavit. The district court found credible Carstarphan's testimony that he assumed Garza had been standing on a walkway based on Carstarphan's experience with other apartment complexes in the area, and that Carstarphan had simply misunderstood Garza's description of the window through which Garza observed Newton. The court also noted the hurried manner under which Carstarphan was required to prepare the affidavit in the early morning hours as events were moving quickly, and the fact that Carstarphan corrected the error when applying for subsequent warrants. We agree with the district court that Carstarphan's preparation of the warrant affidavit may have been negligent at most, but negligence is insufficient to require suppression. *See Franks*, 438 U.S. at 171, 98 S. Ct. at 2684 ("Allegations of negligence or innocent mistake are insufficient."). We see nothing obvious under the circumstances that would have caused Carstarphan to doubt the truth of the affidavit. *See United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (holding that a reckless disregard for the truth may be inferred from circumstances showing obvious reasons to doubt the veracity of the allegations),

*cited with approval by United States v. Tomblin*, 46 F.3d 1369, 1388 (5th Cir. 1995).

As for Officer Garza's observations through the closed blind, even assuming that such information should not have been included in the warrant affidavit because Garza violated the Fourth Amendment by peeking through the window, we agree with the district court that suppression is not required. The district court held that the exclusionary rule does not apply because of the independent source doctrine, which provides that evidence obtained after an illegal search need not be suppressed if (1) "the police would still have sought a warrant in the absence of the illegal search;" and (2) "the warrant would still have been issued (i.e., that there would still have been probable cause to support the warrant) if the supporting affidavit had not contained information stemming from the illegal search." *United States v. Runyan*, 290 F.3d 223, 235 (5th Cir. 2002). Newton does not address the district court's finding that the police would have sought a warrant even if Garza had not looked through the blind. Instead, he argues only that there was no probable cause without Garza's observations. We disagree.

"A probable cause determination is a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Thomas*, 627 F.3d 146, 159 (5th Cir. 2010) (internal quotation marks and citation omitted). Purged of any potentially tainted information, the affidavit here indicated the following. Police went to Unit 1032 in response to a report of possible drug sales from that location. Upon their arrival, Officer Chavez and Officer Garza smelled a strong odor of fresh green marijuana emanating from Unit 1032. The affidavit indicated that both officers were familiar with the odor, appearance, and characteristics of marijuana from their past training and experience. The affidavit further indicated that Officer

No. 11-10112

Chavez knocked on the door of the apartment in an attempt to contact the resident. Officer Garza then observed Newton exit the garage of the apartment in a 2003 BMW. Newton was later apprehended while running on foot. Together, these facts show probable cause to issue the search warrant for the apartment.

We have frequently held that probable cause to search may be based solely on a trained officer's detection of the odor of illicit drugs. *See, e.g.*, *United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999) ("This Court has consistently held that the smell of marihuana alone may constitute probable cause to search a vehicle."); *United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990) ("Distinctive odors, detected by those qualified to know them, may alone establish probable cause."); *Monnette v. United States*, 299 F.2d 847, 850 (5th Cir. 1962); *see Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 369 (1948) ("If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant."). Other circuits are in accord. *See United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991); *see also* 2 Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.6(b), at 310–11 (4th ed. 2004).

The affidavit here also contained more than just information about the marijuana odor. Based on the facts presented, it is reasonable to infer that Newton was fleeing from the officers when they knocked on his door. Flight from law enforcement, in combination with other facts, may further support a finding of probable cause. *See United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995); *see also Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion:

No. 11-10112

It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Under the totality of the circumstances, the warrant affidavit here established probable cause to search the apartment even absent the incorrect information from Officer Carstarphan and absent Officer Garza's observation of Newton through the blind. The district court correctly held that the independent source doctrine precludes suppression.

Newton next argues that his arrest and the search of the BMW were illegal because probable cause was based only on Officer's Garza's illegal actions. The district court held, and we agree, that police had sufficient probable cause to justify Newton's warrantless arrest. Viewed in the light most favorable to the Government, the record shows that police received information from a neighbor about suspected drug activity at Newton's apartment. The officers detected the strong odor of marijuana emanating from the apartment. When Officer Chavez knocked on the door to the apartment and identified himself, a man inside responded that he could not come to the door because he was not clothed. Officer Garza then saw Newton exit the driveway of the apartment and tried to stop him, but the driver refused to stop. Newton was later apprehended on foot a short distance away, and Officer Garza identified him as the same person he saw driving the BMW. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc). Under the above circumstances, a reasonable person could conclude that there was a "fair probability" that Newton was engaged in an offense. *See id.* The same is true of the search of the BMW, which was covered by the initial warrant. Even without Officer Garza's observations through the window, police knew that Newton sped away in that car from the scene where a neighbor gave a report of drug activity and where

6

No. 11-10112

they had confirmed the odor of marijuana.  Police discovered the car abandoned in the apartment complex and had probable cause to search it upon Newton's arrest.

Newton next argues that the police illegally searched a guest room where he was staying at the home of Kurt Vollers.  Newton had an expectation of privacy in the room where he stayed as a guest of Vollers when he was in town.  *See Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S. Ct. 1684, 1688 (1990).  However, third parties with common authority to control the premises may grant consent to a search.  *See United States v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003) (citing *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 993 n.7 (1974)).  Here, as the district court noted, Vollers owned the residence and the furniture in the room, he stored and used his computer there even when Newton was present, and he also stored his memorabilia and trophies in the room.  Although Newton kept a pair of sneakers and a basketball in the room, he could not exclude Vollers from it.  Newton did not pay rent, receive mail, or otherwise occupy the room in a manner suggestive of exclusive control.  *See, e.g.*, *United States v. Hall*, 979 F.2d 77, 79 (6th Cir. 1992) (holding that landlord had authority to consent to search of tenant's room where landlord owned the house and all the furniture; landlord had personal items stored in an adjacent room that was accessed through the rented room; the room was never locked; and there was no understanding that landlord was not to enter the room).  The district court did not clearly err by finding that Vollers had actual authority and that there was no Fourth Amendment violation because his consent to search the room was valid.

Moreover, the police could objectively believe from the above facts that Vollers had apparent authority to consent to the search.  *See Illinois v. Rodriguez*, 497 U.S. 177, 179, 110 S. Ct. 2793, 2796 (1990) (concluding that a "warrantless entry is valid when based upon the consent of a third party whom

7

the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not"). The district court so found, and Newton has abandoned a challenge to this alternative ground for denying his suppression motion by failing to brief the issue. *See United States v. Zamora*, 661 F.3d 200, 208 n.2 (5th Cir. 2011).

Next, Newton argues that the search of duffle bags and a shoe box from the guest room at Vollers's house pursuant to search warrants were the fruit of the initial illegal search of Unit 1032 because were it not for the illegal actions surrounding the first warrant, law enforcement would not have conducted surveillance on Vollers and sought his consent to search the guest room. We disagree. We have already determined that the search of Unit 1032 and Newton's arrest were valid even absent Officer Garza's observations. Moreover, the police were led to Vollers because Vollers owned the BMW that Newton had been driving. Vollers's consent to search his house more than five hours after the police encounter with Newton was not a product of police action at Newton's apartment and further attenuated the connection between Officer Garza's observations and the seizure of the duffle bags and shoe box. *See, e.g.*, *United States v. Miller*, 146 F.3d 274, 279–80 (5th Cir. 1998) (explaining that consent which is not the product of initial illegal action may constitute a break in the causal chain of events). The district court further held that the seizure of two of the duffle bags was supported by the plain view doctrine and that the searches of one duffle bag and the shoe box were supported by the independent source doctrine. Because Newton does not address these bases for denying his suppression motion, the issues are deemed waived and we will not address them. *See Zamora*, 661 F.3d at 208 n.2.

Newton next argues that Officer Carstarphan committed a *Franks* violation when applying for warrants to search the duffle bags and shoe box by failing to inform the magistrate judge that he had included false information in

the warrant application to search Unit 1032.  He contends, therefore, that the warrants to search the duffle bags and shoe box were invalid.  This argument is without merit.  Officer Carstarphan did not apply for the warrants to search the duffle bags and shoe box.  They were sought by a different officer from a different police force in a neighboring town, where Vollers's residence was located.  Those warrant applications did not include the incorrect information that had been included in the application to search Unit 1032, and there is no indication that the officer applying for the warrant knew or should have known that Officer Carstarphan had included incorrect information in his warrant application.  Therefore, Newton has not shown that any omission from the warrant applications to search the duffle bags and shoe box was done "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155, 98 S. Ct. at 2676.

Newton also challenges the search of two cell phones, one found in the BMW and one found in Unit 1032, because he contends that the warrant to search the phones was based on the initial illegal warrant to search the apartment.  The warrant to search the cell phones did not contain the incorrect information that was included in the warrant to search Unit 1032, and we have already found that the search of Unit 1032 was valid; therefore, this argument fails.

Newton also argues that a warrant issued to search his California home was invalid because the officer who sought the California warrant attached the Texas affidavits in support of the application.  Because we conclude that the Texas searches were valid, Newton's challenge to the California warrant is unavailing.  Although he does not expressly articulate the argument, to the extent Newton contends that the California warrant was invalid because it included information that Officer Garza illegally observed through the window, we conclude that the district court correctly held that the warrant was supported

No. 11-10112

by sufficient other evidence and that officers would have sought the California warrant even without Officer Garza's observation. *See, e.g., United States v. Oliver*, 630 F.3d 397, 408–09 (5th Cir. 2011) (holding that a search was not fruit of police illegality where warrant affidavit contained sufficient information to make warrant a distinct, untainted source even without mentioning original challenged conduct).

Next, Newton argues that the district court erroneously denied his motion to reconsider the denial of his suppression motion after the Government disclosed evidence affecting the credibility of Kurt Vollers as a witness. The new evidence concerned Vollers's previously-unknown friendship and association with a drug dealer named Deloney. The district court held that the new information about Deloney did not affect the court's assessment of Vollers's credibility because the court had been aware that Vollers was under investigation for unrelated drug trafficking and because Vollers's testimony was consistent with the testimony of other witnesses and was corroborated by his actions. The district court determined that the new evidence did not change its determination that Vollers had validly consented to a search of his house, and that even if that testimony were discredited, the officers still acted properly under Vollers's apparent authority to consent. The district court was in the best position to assess Vollers's credibility, and we see no abuse of discretion in the denial of the motion based on the court's determination that the new information did not change the court's view of the witness. *See United States v. Valentine*, 401 F.3d 609, 614 (5th Cir. 2010).

Finally, Newton argues that the district court committed several sentencing errors by (1) applying an enhancement for perjury, (2) determining that Newton is a career offender, and (3) imposing an unreasonable sentence. For the first time in his reply brief, Newton acknowledges that he waived his right to appeal his sentence as part of his guilty plea, but he argues that the

waiver should not be enforced for a variety of reasons.  He contends that it was improper to include an appeal waiver in his consent to a conditional guilty plea under FED. R. CRIM. P. 11(a)(2); that there was confusion about the appeal waiver during the plea colloquy; and that enforcing the waiver will result in a miscarriage of justice.  We will not consider issues raised for the first time in a reply brief.  *See United States v. Aguirre-Villa*, 460 F.3d 681, 683 n.2 (5th Cir. 2006).  Moreover, even if we were to consider Newton's arguments, we would find them unpersuasive.

Plea agreements are construed using normal contract principles, and they will be enforced so long as (1) the defendant knowingly and voluntarily agreed to the waiver, and (2) the waiver applies to the circumstances at hand.  *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011).  Contrary to Newton's contention about confusion, the district court clearly and unambiguously discussed the appeal waiver with Newton and defense counsel, both of whom affirmatively indicated their understanding that Newton was waiving all of his appellate rights except for a challenge to the denial of the suppression motion.  The appeal waiver is valid and enforceable.  *See United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005).

AFFIRMED.