# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-11099

United States Court of Appeals
Fifth Circuit

**FILED**

November 9, 2017

Lyle W. Cayce
Clerk

LAVELLE EVANS,

> Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, JONES, and ELROD, Circuit Judges.

KING, Circuit Judge:

Lavelle Evans was convicted for the murder of Crystal Jenkins and sentenced to life in prison. After exhausting his state habeas remedies, Evans petitioned for federal habeas relief. Evans's pro se petition claims, among other things, that his trial counsel rendered ineffective assistance by failing to move for suppression of a cell phone found in Evans's home. He contends that the cell phone, and the subsequently discovered call records linking him to the scene of the murder, were obtained from an unconstitutional search conducted pursuant to a deficient warrant. The district court denied this claim. We granted a certificate of appealability and now we AFFIRM.

No. 14-11099

I.

Lavelle Evans was convicted by a Texas jury for the murder of Crystal Jenkins and sentenced to life in prison. *See Evans v. State*, No. 05-08-01289-CR, 2010 WL 779327, at *5–6 (Tex. App.—Dallas Mar. 9, 2010, pet. ref'd) (not designated for publication). Prior to the murder, Evans and Jenkins had been charged as coconspirators in a drug case in El Dorado, Arkansas. On October 7, five days before their trial was set to start, the Arkansas prosecutor told Evans's attorney that Jenkins had agreed to testify on behalf of the prosecution. Later that morning, Evans met with his defense attorney to discuss the impending trial. That night, between 7:30 p.m. and 8:00 p.m., Jenkins's brother saw Jenkins and Evans in a car together in El Dorado. Jenkins told her brother that she and Evans were going back to her house.

The next morning at around 5 a.m., a man reported that he heard several gunshots while he was out for a stroll around White Rock Lake in Dallas, Texas. On the shore of White Rock Lake, police found the body of a woman shot three times. The deceased would later be identified as Jenkins.

Once Jenkins's body was identified, police obtained a search warrant for Evans's home. This warrant and the affidavit supporting it are crucial to this appeal. The section of the warrant meant for designating the things to be seized failed to do so. Instead, it provided a description of Evans's house in El Dorado. The warrant did not mention or otherwise reference any other supporting material. An affidavit from Investigator Mark Thomas provided more information on the things to be seized. Investigator Thomas swore in the affidavit that "instruments of a crime," among other things, were being concealed at Evans's home. It further explained that on the night before the murder, Evans called Jenkins's sister. He asked for Jenkins, and the sister handed over the phone. The sister then overheard Evans telling Jenkins to meet him at a Subway restaurant. The affidavit was sworn to in the presence

2

of the judicial officer who issued the warrant, and the judicial officer signed the affidavit. The state habeas record does not reveal whether the affidavit was physically attached to the warrant or even physically present when the warrant was executed.

Pursuant to the warrant, Investigator Thomas and several other officers searched Evans's home and seized, along with other things, two cell phones. The officer who seized the cell phones kept them in his possession instead of logging them. Only one of the cell phones worked. The working phone's call records showed that between October 7 and 9 the cell phone had made or received at least 197 calls. Cell tower data showed that the cell phone had left El Dorado at 10:30 p.m. the night of October 7, traveled to Dallas, and then returned to El Dorado no later than 9:38 a.m. on October 8. The data specifically placed the cell phone near White Rock Lake between 4:38 a.m. and 5:07 a.m. Thus, the data put Evans at the scene of the murder.[1] The call log also led police to Evans's relatives, Jarvis Moore and Quinn Moore. Both of them spoke to Evans on multiple occasions around the time of the murder. They described Evans as sounding upset and possibly "suicidal or something."

At trial, it came out that Evans lacked a solid alibi. In a letter postdating the murder, Evans wrote to a friend that he could not have killed Jenkins because he had been out drinking with three other friends that night. April McGraw, Evans's girlfriend at the time of the murder, testified to something different. According to McGraw, she left Evans with her child at 6:30 p.m. on October 7 to go to work and returned at 7:10 a.m. the next morning, at which point Evans was home. When the prosecution questioned her about Evans's

---

[1] The phone number for this cell phone was registered to Roshanda Sims. Sims and Evans had previously dated, and Sims testified at trial that she obtained the cell phone for Evans. Further, the phone contained pictures of Evans, April McGraw (Evans's girlfriend at the time of the murder), and a boy believed to be Evans's son. The cell phone call log from October 7 to 9 also showed at least 48 calls with McGraw.

claim in his letter that he had been out drinking, McGraw stated that Evans must have been lying because there was "no way" that he would have left the house. Separately, there was evidence that someone had tampered with Evans's home monitoring unit on the night of Jenkins's murder. At the time of the murder, Evans was on supervised release in an unrelated case, and he wore a device on his wrist that transmitted a signal to a unit in his home that monitored every time he came and went. The night of the murder, the monitoring unit had been disabled and the backup battery tampered with. The next morning at 9:54 a.m., the monitoring unit was reconnected and turned back on.

Evans was tried and convicted in Texas for capital murder. The State did not seek the death penalty, and Evans was sentenced to life in prison. Evans's direct appeal was unsuccessful. In February 2011, he filed a pro se state habeas petition. In it, he raised several claims, including the particular ineffective assistance claim currently before us. Specifically, Evans contended that his trial counsel rendered ineffective assistance by failing to move for suppression of the working cell phone and call records. A Texas state trial court rejected all of Evans's claims. The court rejected Evans's ineffective assistance claim based on the defaulted Fourth Amendment claim because it found that his trial counsel "believed the best means of attacking the search warrant was on the documentation of what was seized and the chain of custody of the items seized." Thus, the trial court recommended that Evans's claim be denied because he had failed to show that his trial counsel's performance was deficient or that he was prejudiced. The Texas Court of Criminal Appeals ("TCCA") denied Evans's petition without a written order on the findings of the trial court.

In February 2013, Evans, again proceeding pro se, filed a federal habeas petition. Once again, he asserted, among his many claims, the same ineffective assistance claim based on his trial counsel's failure to move to suppress. The

case was referred to a magistrate judge, who recommended denying all of Evans's claims as well as his request for an evidentiary hearing. With respect to Evans's ineffective assistance claim based on the defaulted Fourth Amendment claim, the magistrate judge recommended finding that Evans had "not demonstrated either deficiency or prejudice." *Evans v. Stephens*, No. 3:13-CV-0021-B, 2014 WL 4271625, at *13 (N.D. Tex. Aug. 29, 2014). The magistrate judge concluded that the affidavit supporting the warrant identified the items to be seized with sufficient particularity. Thus, the warrant's failure to incorporate the affidavit or identify the items with particularity was "a clerical error . . . subject to the good-faith exception to the Texas exclusionary rule." *Id.* at *14. The magistrate judge further recommended finding that Evans's trial counsel had strategically chosen to object to the cell phone's admission based on documentation and chain of custody arguments, rather than allege a Fourth Amendment violation. *Id.* The district court adopted the magistrate judge's recommendations and denied Evans a certificate of appealability ("COA") on all of his claims. *Id.* at *1.

Evans filed a motion for a COA in this court. We granted a COA on Evans's ineffective assistance claim based on his defaulted Fourth Amendment claim. We declined to grant a COA on his other claims.

Evans argues on appeal that his trial counsel was constitutionally ineffective for failing to move for suppression. Specifically, Evans contends that the search which uncovered the working cell phone violated the Fourth Amendment because the warrant failed to identify the items to be seized with particularity and failed to incorporate the supporting affidavit. The call records, as fruit of the poisonous tree, would therefore have been subject to the exclusionary rule had Evans's trial counsel moved to suppress. Moreover, Evans argues that under *Groh v. Ramirez*, 540 U.S. 551 (2004), the good-faith exception to the exclusionary rule does not apply because no reasonable officer

No. 14-11099

could have believed that the warrant complied with the Fourth Amendment given the warrant's obvious lack of particularity. Finally, Evans contends that he has demonstrated prejudice because the call records were the key piece of evidence placing him at the scene of the murder.[2]

## II.

As a state prisoner raising a claim previously adjudicated on the merits by a state court,[3] Evans's habeas petition is governed by 28 U.S.C. § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Evans does not contend that the state habeas court erred with respect to any factual determination. Rather, he alleges error in the state habeas court's interpretation and application of federal law. Section 2254(d)(1) therefore governs his claim. That section authorizes federal courts to grant habeas relief to state prisoners whose federal claims were "adjudicated on the merits" in state court only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Evans therefore can only receive habeas relief if he shows either that the state habeas court's decision was "contrary to" federal law then clearly established by the Supreme Court or that the decision

---

[2] Evans does not argue that the cell phones or call records would be inadmissible, if objected to, under Texas law. Nor does he argue that the affidavit did not provide probable cause or describe the items to be seized with particularity. Finally, he does not argue that he is entitled to an evidentiary hearing based on the state habeas court's failure to allow him to develop the record. We will therefore not consider these arguments. *See Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017).

[3] This follows from the rebuttable presumption that unexplained orders adjudicate the petitioner's claims on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Here, we find nothing in the state trial court's findings or the TCCA's summary denial to rebut the presumption.

involved an "unreasonable application" of such law. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011).

Both bases for relief present the same threshold question: whether the relevant federal law is "clearly established." *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established federal law is determined by the United States Supreme Court and refers to the Court's "holdings, as opposed to . . . dicta." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). This circuit's precedents plainly do not constitute "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see Renico v. Lett*, 559 U.S. 766, 778 (2010). We may not use our sister circuits' precedents "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam). Nor may we "canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct." *Id.* (first citing *Parker v. Matthews*, 567 U.S. 37, 47–49 (2012) (per curiam); and then citing *Lett*, 559 U.S. at 778–79). Even so, lower court precedents are not wholly irrelevant. Divergent approaches among the lower courts can reflect a lack of guidance from the Supreme Court and signal that federal law is not clearly established. *See Carey v. Musladin*, 549 U.S. 70, 76–77 (2006). But such divergence is not dispositive, as judicial experience shows that even reasonable judges may sometimes reach unreasonable conclusions. *Cf. Williams*, 529 U.S. at 410 ("[T]he mere existence of conflicting authority does not necessarily mean a rule is new." (quoting *Wright v. West*, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring))). This threshold question of whether the relevant law is clearly established can be dispositive: a state court's decision cannot be contrary to or an unreasonable

application of clearly established federal law if there is no clearly established federal law. *See Musladin*, 549 U.S. at 77.

To acquire relief under the contrary to clause, Evans must show that the state court applied "a rule that contradicts" governing Supreme Court caselaw or confronted "materially indistinguishable" facts from a Supreme Court decision and arrived at a different result. *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405–06). The state habeas court need not provide a "formulary statement" of the controlling test. *See Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). In fact, the state habeas court need not even display awareness of the Supreme Court's cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* at 8. In the "run-of-the-mill" case, where the state habeas court applies the correct legal rule, the contrary to clause will not fit and the state habeas court's decision will be reviewed under the unreasonable application clause. *See Williams*, 529 U.S. at 406.

To acquire relief under the unreasonable application clause, Evans must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Importantly, whether the state court's decision involved an unreasonable application of Supreme Court precedent does not depend solely on the state habeas court's actual analysis. Section 2254(d) requires us to "determine what arguments or theories supported or, . . . *could have supported*, the state court's decision." *Id.* at 102 (emphasis added). We are therefore tasked with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon. *Cf. Neal v. Puckett*, 286 F.3d 230, 244–46 (5th Cir. 2002) (en banc) (per curiam) (holding that § 2254(d) directs us to

review "only a state court's 'decision,' and not the written opinion explaining that decision").[4] Once we have gathered the arguments and theories that could support the state court's ultimate decision, § 2254(d) requires us to "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102. This standard is purposefully "difficult to meet." *Id.*

And it is difficult for yet another reason. Not only must we invent possible avenues the state court could have relied upon to deny Evans relief and then give those theories the benefit of the doubt; we also may consider only the factual record before the state court. Section 2254(d)(1), through its use of "backward-looking language," limits our review "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).[5]

---

[4] We have not applied the rule from *Neal* on all occasions. *See Salts v. Epps*, 676 F.3d 468, 479–80 (5th Cir. 2012). In *Salts*, we held that § 2254(d)(1)'s bar to relief was removed when a state habeas court stated a rule that "directly conflict[ed]" with a Supreme Court case. *Id.* at 477. Accordingly, we were not required to "imagine any possible reasonable analysis . . . that could support the state appeals court's decision." *Id.* at 479. Instead, we reviewed de novo. *Id.* at 480.

Here, the state habeas court did not state or apply a rule that directly conflicts with Supreme Court precedent. The state habeas court recited briefly but accurately the two *Strickland* prongs and relied upon them in dismissing Evans's claim. The state habeas court's analysis was far from thorough, but we may not review its decision de novo simply because we find its written opinion "unsatisfactory." *See Neal*, 286 F.3d at 246. There is no indication that the state habeas court affirmatively misrepresented or misstated federal law. Accordingly, we find *Neal* is applicable, and we will consider the theories and arguments that could have potentially supported the state habeas court's decision.

[5] Several of our pre-*Pinholster* cases indicate that an evidentiary hearing may be appropriate when the state record is deficient. *See, e.g.*, *Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996) (remanding for further factual development on whether trial counsel was ineffective in failing to move to suppress evidence and whether the exclusion of evidence would have affected the case); *see also United States v. Culverhouse*, 507 F.3d 888, 898 (5th Cir. 2007) ("We do not have the requisite evidence before us to decide either ineffective assistance issue raised in [the petitioner's] COA. Rather than decide [the petitioner's] ineffective assistance claims based on scant evidence or unnecessary assumptions, 'the better

No. 14-11099

In sum, in order to show that the district court erred in denying his habeas petition, Evans must show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny Evans relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. With this in mind, we turn to Evans's claim.

## III.

To assess Evans's claim, we begin by determining the relevant clearly established federal law as set forth by the Supreme Court. This leads us to the Sixth Amendment and, more specifically, the *Strickland* line of cases governing ineffective assistance of counsel. Next, we consider the Fourth Amendment and the good-faith exception to the exclusionary rule. Evans's defaulted Fourth Amendment claim propels his ineffective assistance claim—if it fails, so too will the rest of Evans's case. We conclude just that: Evans's defaulted Fourth Amendment claim is undermined by the good-faith exception, and therefore Evans is not entitled to relief.[6]

## A.

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (quoting

---

approach is to have the district court conduct an evidentiary hearing.'" (quoting *United States v. Herrera*, 412 F.3d 577, 582 (5th Cir. 2005))). After *Pinholster* was decided, we have indicated that the state court record alone must reveal that the state habeas court unreasonably applied federal law under § 2254(d)(1) before an evidentiary hearing is permitted. *See Smith v. Cain*, 708 F.3d 628, 634–35 (5th Cir. 2013). Further, a petitioner seeking an evidentiary hearing must also satisfy the requirements of § 2254(e)(2). *See id.* at 635. We need not determine whether in this case Evans would have to satisfy the requirements of § 2254(d)(1) based solely on the state court record before we could consider granting him an evidentiary hearing. Evans failed to brief arguments regarding the district court's denial of his request for an evidentiary hearing, and therefore we do not consider whether one is appropriate. *See Norris*, 869 F.3d at 373 n.10.

[6] The state habeas court took a different tack. It focused on whether Evans's counsel acted strategically in raising chain of custody and authenticity arguments instead of a suppression motion. It did not consider the underlying Fourth Amendment violation.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984)). For Evans to prevail on his ineffective assistance claim, he must satisfy the two familiar *Strickland* prongs: he "must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Id.* (citing *Strickland*, 466 U.S. at 687). *Strickland*'s first prong "sets a high bar." *Id.* Evans's trial counsel "was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Richter*, 562 U.S. at 107 (first citing *Knowles v. Mirzayance*, 556 U.S. 111, 125–26 (2009); then citing *Rompilla v. Beard*, 545 U.S. 374, 383 (2005); then citing *Wiggins v. Smith*, 539 U.S. 510, 525 (2003); and then citing *Strickland*, 466 U.S. at 699). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). To meet *Strickland*'s second prong, Evans "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Evans seeks to establish the two *Strickland* prongs through his defaulted Fourth Amendment claim. For Evans to demonstrate deficient performance, he must at a minimum show that the evidence "would have been suppressed if objected to." *See Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005) (quoting *Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996)) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). But even if the suppression motion would be non-frivolous, failing to object, when viewed in light of all the circumstances, may still constitute a reasonable trial strategy. *See Kimmelman*, 477 U.S. at 384 ("[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel . . . ."). For Evans to

demonstrate prejudice, he must show "there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Id.* at 375.

Proof of both prongs turns on whether the evidence would be excluded if counsel moved to suppress. Obviously, counsel is not deficient for failing to make meritless suppression motions. And there can be no reasonable probability of a different result if the evidence would come in anyway. In effect, Evans's defaulted Fourth Amendment claim is an "element of proof of his Sixth Amendment claim." *See id.*

Whether Evans's call records were excludable turns on whether the call records fall within the good-faith exception to the exclusionary rule. Given § 2254(d)(1) deference, Evans must establish not only that suppression of the call records would be the correct result, but also that it would be contrary to or an unreasonable application of clearly established federal law for the state habeas court to rule otherwise.[7] We ultimately conclude that Evans cannot meet this demanding standard.

### B.

The Fourth Amendment commands that no warrant shall issue except those "particularly describing the . . . things to be seized." U.S. CONST. amend. IV. It is the warrant itself that must meet this particularity requirement, not the warrant's supporting documents. *See Groh*, 540 U.S. at 557. A search of a

---

[7] When an ineffective assistance claim is contingent upon an embedded constitutional rule of criminal procedure, we must determine whether that embedded rule has been clearly established. *See Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002) ("The AEDPA effectively codified *Teague* such that federal *habeas* courts must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction becomes final."); *see also Rivas v. Thaler*, 432 F. App'x 395, 403 (5th Cir. 2011) (per curiam) (refusing to consider a new constitutional rule of criminal procedure as a basis for an ineffective assistance of counsel claim); *Palacios v. Burge*, 589 F.3d 556, 562 (2d Cir. 2009) (applying § 2254(d)(1)'s unreasonable application standard to an embedded Fourth Amendment claim).

No. 14-11099

home pursuant to a warrant that does not provide any description of the items to be seized is a "warrantless" search within the meaning of Supreme Court caselaw and is therefore unconstitutional (provided no exception to the warrant requirement applies). *Id.* at 558–59. In *Groh*, the Supreme Court held that a warrant was facially invalid when it described the premises to be searched in the section which would have normally contained a description of the things to be seized. *Id.* at 554, 557. The warrant did not reference supporting documents. *Id.* at 557. Nor was it accompanied by the application or affidavit when it was delivered to the premise's owner (both the application and affidavit were under seal). *Id.* The warrant was therefore facially invalid, and the search conducted pursuant to that warrant was unconstitutional. *Id.* at 558–59.[8]

Proof of a Fourth Amendment violation does not automatically require suppression of unconstitutionally obtained evidence. *See Herring v. United States*, 555 U.S. 135, 137 (2009). The traditional exclusionary rule, "that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court," *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), has been sharply curtailed through the good-faith exception. This exception to the exclusionary rule, adopted by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), arises frequently in the context of

---

[8] Even though the Court in *Groh* held that it is the warrant itself that must meet the particularity requirement, the Court has left open whether a warrant may incorporate other documents through reference or accompaniment to meet the particularity requirement. *See Groh*, 540 U.S. at 557–58. The Court expressly refused to hold "that the Fourth Amendment prohibits a warrant from cross-referencing other documents." *Id.* at 557. The Court then went on to note that "most," but not all, circuits allow a warrant to be saved by a referenced and accompanying affidavit. *Id.* at 557–58. But the *Groh* affidavit was neither referenced nor accompanying, and the Court therefore cut its analysis of incorporation short. *Id.* at 558.

The State argues that there was no Fourth Amendment violation because Evans cannot show the affidavit did not accompany the warrant. We do not address this argument because even if there were a Fourth Amendment violation, we conclude that the call records would still be admissible under a reasonable application of clearly established federal law.

searches conducted pursuant to an invalid warrant. In a companion case to *Leon*, the Court held that the "exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid." *Massachusetts v. Sheppard*, 468 U.S. 981, 987–88 (1984). Crucially, however, the Court qualified what it meant by "objectively reasonable reliance." *See Leon*, 468 U.S. at 922–23. Most relevantly for the case currently before us, the Court held that "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citing *Sheppard*, 468 U.S. at 988–91).

The *Groh* Court picked up where *Leon* left off. There, it held that an officer was not entitled to qualified immunity when the warrant provided no description of the items to be seized. *Groh*, 540 U.S. at 554, 563–64. "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Id.* at 563 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)). Just "a simple glance" at the warrant "would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Id.* at 564. The Court noted that absent specification of the items to be seized in the warrant, the magistrate's assent could theoretically be limited to particular items the affidavit sought and not all. *Id.* at 560–61. While *Groh* addressed the standard for qualified immunity in a *Bivens* action, the Court specified that if the case had arisen in the exclusionary rule context, the good-faith exception would not apply because both qualified immunity and the good-faith exception involve "the same standard of objective reasonableness." *Id.* at 564 n.8 (quoting *Malley v. Briggs*,

No. 14-11099

475 U.S. 335, 344 (1986)); *see United States v. Allen*, 625 F.3d 830, 838 (5th Cir. 2010) (applying *Groh* to a good-faith exception case).

Evans argues that the relevant facts surrounding the *Groh* warrant and the warrant in this case are "materially indistinguishable." He is right in all respects except one: here the affidavit, in addition to the warrant, was signed by a judicial officer. We conclude that this difference distinguishes *Groh* such that the state habeas court would not be unreasonable in finding the call records would be subject to the good-faith exception.

The nature of the good-faith exception supports this conclusion. The exception's application is guided by the exclusionary rule's purpose—deterrence of police misconduct. *See Herring*, 555 U.S. at 140–44. Lower courts must consider whether the police's conduct was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. *Groh* supplies a vital data point that directs lower courts when performing this balancing. But even with this, the balancing analysis still necessarily involves a "substantial element of judgment." *See Alvarado*, 541 U.S. at 664. Given the inherent judgment involved, we are compelled to give "more leeway" in deciding whether an application of the good-faith exception is reasonable. *See id*.

In light of this leeway, we are convinced that fairminded disagreement could exist over whether *Groh* is materially distinguishable from this case. In fact, we have already distinguished *Groh* in a similar factual situation. In *Allen*, we held that the warrant in question was not sufficiently particularized to pass constitutional muster as it provided an overly broad description of the items to be seized. *Allen*, 625 F.3d at 835–36. We also observed that the affidavit could not save the warrant from invalidity because it was unreferenced. *Id.* at 836. We then considered the proper remedy for the

constitutional violation. *Id.* Allen argued that the proper remedy was suppression of the evidence and that *Groh* compelled this result. *Id.* at 838. We disagreed. *Id.* at 839. We agreed that similarly to *Groh* (though not to the same extent) the warrant presented "an obvious error" which made it facially invalid. *Id.* But for us "[t]he distinguishing factor" was "that the magistrate judge signed not only the warrant, but also the affidavit, to which the list of items to be seized was attached." *Id.* This gave the executing officer an "additional objective reason to believe the warrant was valid." *Id.* "Because of this, the officer's conduct was less culpable, and therefore less likely to be deterred by applying the exclusionary rule, than the conduct in *Groh*." *Id.* Of course, we also cited additional factors that reduced the agents' culpability (the warrant application was precleared by the U.S. Attorney's office and the agents had copies of the affidavit with them when conducting the search). *Id.* at 837. It is certainly possible that without these additional factors, *Allen* would have come out differently. Were this case presented to us on direct appeal, we might hold that a mere signature by a judicial officer on the affidavit is insufficient to establish good-faith reliance on the warrant. But we cannot go so far as to hold that such a conclusion would be beyond any possibility of fairminded disagreement—especially given that we labeled the magistrate's signature as *the* distinguishing factor between *Allen* and *Groh*.

Our confidence in this position is cemented by one of the purposes of the particularity requirement. The requirement safeguards against general searches by giving magistrate judges the ability to curtail the scope of searches. *See Groh*, 540 U.S. at 560–61. In general, when a warrant does not state the things to be seized, the executing officers have no reasonable basis for determining which items they are authorized to search for and seize. "[U]nless the particular items described in the affidavit are also set forth in the warrant itself . . . there can be no written assurance that the Magistrate actually found

probable cause to search for, and to seize, every item mentioned in the affidavit." *Id.* at 560. But when the magistrate signs the affidavit, such written assurance exists, and the executing officer has an objectively reasonable basis for concluding that a finding of probable cause was made with regard to all the items listed in the affidavit. As we observed in *Allen* "the magistrate judge's signature on the affidavit reduces the concern that he did not agree to the scope of the search as defined and limited therein." *Allen*, 625 F.3d at 839. Thus an officer would have a reasonable basis for concluding that "one of the core purposes of the Fourth Amendment" had been fulfilled. *Id.*

In sum, a theory—which is neither contrary to nor an unreasonable application of clearly established federal law—could support the state habeas court's denial of relief, and therefore Evans is entitled to none.

IV.

For the foregoing reasons, we AFFIRM.

17