# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 17, 2025

Lyle W. Cayce
Clerk

No. 23-20435

Feanyichi E. Uvukansi,

*Petitioner—Appellant*,

*versus*

Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1624

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

A Texas state prisoner brought a Section 2254 application that challenged his capital murder conviction. He is currently serving a sentence of life without parole. At trial, the sole identification witness testified he had no agreement with prosecutors regarding his testimony. The witness, though, did have an agreement. In state habeas proceedings, the court determined that jurors learned enough about the agreement from another witness to make the false testimony immaterial. The federal district court dismissed Uvukansi's application, holding that the state court's decision was not

contrary to, or an unreasonable application of, clearly established Supreme Court precedent. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2012, three people were shot and killed outside a nightclub in Houston, Texas. *Uvukansi v. State*, No. 01-14-00527-CR, 2016 WL 3162166, at *1–2 (Tex. App.—Houston [1st Dist.] June 2, 2016, pet. ref'd). An eyewitness named Jeresano claimed he saw the shooter's face and picked Uvukansi out of a photo array. *Id.* A jury found Uvukansi guilty of capital murder. *Id.* at *1. Because the state had not sought the death penalty, he was automatically sentenced to life without parole. *Id.* His conviction was affirmed on direct appeal. *Id.*

Jeresano was the sole identification witness at trial. The prosecutor later stated that Jeresano testified "with such conviction his testimony alone convinced the jury of [Uvukansi's] guilt." As a federal judge put it, Jeresano "made [the] case. A triple murderer got convicted because of [him], basically." Undoubtedly, Jeresano's testimony was critical to the State's case.

Uvukansi argues he was not allowed at trial to elicit the facts that would have called Jeresano's credibility into question. Jeresano had pled guilty to federal drug charges. It is now clear that an agreement had been reached that if Jeresano testified against Uvukansi, the state prosecutor would write a letter to the sentencing judge detailing his cooperation, and the federal prosecutor would move for a sentence below the ten-year statutory minimum.[1] The state prosecutor's help plausibly led to Jeresano's being sentenced only to three years of probation in the federal prosecution.

---

[1] This motion is referred to as a "5K1.1 motion," after Section 5K1.1 of the U.S. Sentencing Guidelines. That provision allows for a departure below the recommended

No. 23-20435

Agreements like Jeresano's provide fertile grounds for impeachment of testimony. The prosecutor on direct asked if anyone had "made any promises for testifying" at trial, and Jeresano answered "[n]ope." On cross-examination, defense counsel asked whether Jeresano had a plea agreement that if he testified, "they would consider giving you a 5K[1].1 reduction under the Federal sentencing guidelines?" He answered: "Not that I know of."

After this testimony and out of the presence of jurors, defense counsel informed the court and the state prosecutor that the federal prosecutor had agreed to recommend a lesser sentence if Jeresano testified against Uvukansi. No specific lesser sentence had been offered, but Jeresano's testimony would be considered by the sentencing judge. The state prosecutor responded that she was unaware of any sentencing agreement between Jeresano and the federal prosecutor. She had, however, previously emailed Jeresano's attorney saying that she would be willing to write a letter detailing Jeresano's cooperation to his sentencing judge. In her closing argument, the state prosecutor described the agreement this way: "Only after [Jeresano] had pled guilty and after he came in here and testified is there even a possibility that he's going to get a deal. We don't even know."

At trial, defense counsel managed to elicit parts of the agreement from Jeresano's attorney. After the trial, Jeresano's attorney would tell the federal prosecutor of Jeresano's cooperation and ask for a Section 5K1.1 substantial assistance motion. This would let the sentencing judge reduce Jeresano's sentence. Jeresano's attorney had not explained to Jeresano what a Section 5K1.1 motion was, but he had told Jeresano that testifying would probably help him at sentencing, emphasizing that the sentencing judge had

---

Guidelines range. The motion that allows the sentencing judge to sentence below the statutory minimum is a motion under 18 U.S.C. § 3553(e).

substantial discretion.  Further, Jeresano's sentencing had been continually reset so he could testify against Uvukansi.  Jeresano's attorney did not mention (1) a provision in Jeresano's plea agreement detailing a possible Section 5K1.1 substantial assistance motion, or (2) the state prosecutor's promise to write a letter to the sentencing judge extolling Jeresano's cooperation in the capital murder trial.  Only during state habeas proceedings did Jeresano's attorney detail the full scope of the agreement.

Although Uvukansi did not raise the false testimony issue on direct appeal, he did raise it in state habeas proceedings.  On November 14, 2017, he filed an application for a writ of habeas corpus in the state district court in which he had been convicted.  That court was to make findings of fact and then transmit them to the Texas Court of Criminal Appeals along with the relevant record.  *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(b), (d).  The appellate court then would decide whether to grant the writ.  *Id.* § 5.

In this case, the state district court conducted an evidentiary hearing.  It then issued the required recommended findings of fact on April 2, 2019.  It also recommended that Uvukansi's application be denied.  The court found Jeresano's testimony that nobody had promised him anything to be false and misleading.  Whether or not Jeresano knew what a Section 5K1.1 substantial assistance motion was, he "knew that if he cooperated . . . the federal prosecutor would do something" that might result in a reduced sentence.  Jeresano also knew the state prosecutor would write a letter to the sentencing judge extolling his cooperation.

The state district court then found that the false testimony was immaterial because most of the agreement was before the jury.  Further, the court made a distinction that the false testimony only went to Jeresano's credibility and not to the validity of his identification.  The court concluded that Uvukansi had not proved "by a preponderance of the evidence" that "there

is a reasonable likelihood that the false testimony affected the judgment of the jury." In doing so, it adopted, nearly verbatim, the State's proposed findings as to why Jeresano's false testimony was not material, including the State's articulation of the standard for materiality.

As we already mentioned, these findings were recommendations to the Court of Criminal Appeals. The parties made different objections to them. Uvukansi argued that he did not bear the burden of showing materiality and that Jeresano's false testimony was material. The State insisted that Jeresano's testimony was not false. Before deciding on the objections, the appellate court on September 23, 2020, remanded the application for the state district court to address a pending motion. After the reason for the remand was resolved, the Court of Criminal Appeals denied Uvukansi's application without stating reasons on April 14, 2021. Uvukansi petitioned for a writ of certiorari, which the Supreme Court denied on June 13, 2022. *Uvukansi v. Texas*, 142 S. Ct. 2811 (2022) (mem.).

While his petition for a writ of certiorari was pending, Uvukansi filed a Section 2254 application in federal district court, raising the same claims he raised in his state application. The case was referred to a magistrate judge, who concluded that Uvukansi failed to clear the relitigation bar in the Antiterrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2254(d). The district court largely adopted the magistrate judge's report and recommendation.[2]

This court granted a certificate of appealability on two issues regarding the false testimony's materiality: (1) whether the state habeas decision

---

[2] The district court rejected the magistrate judge's conclusion that the state district court's materiality determination was a finding of fact rather than a mixed question of law and fact.

was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; and (2) whether the state habeas decision was based on an unreasonable determination of the facts. Those are the criteria for clearing AEDPA's relitigation bar. 28 U.S.C. § 2254(d).

## DISCUSSION

### I.    *AEDPA Standard of Review*

"When a district court denies a [Section] 2254 application, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, 'applying the same standard of review to the state court's decision as the district court.'" *Anaya v. Lumpkin*, 976 F.3d 545, 550 (5th Cir. 2020) (quoting *Robertson v. Cain*, 324 F.3d 297, 301 (5th Cir. 2003)). Mixed questions of law and fact are reviewed *de novo*. *Id.* Uvukansi must show that the state habeas decision was either (a) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (b) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first standard applies to questions of law and mixed questions of law and fact. *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). The second applies to questions of fact. *Id.* A state court's factual findings are cloaked in a rebuttable "presumption of correctness," which can only be overcome "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Relevant here, materiality is a mixed question of law and fact reviewed under Section 2254(d)(1). *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997).

For purposes of Section 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." *Williams v. Taylor* (*Williams I*), 529 U.S. 362, 412–13 (2000). The decision involves an "unreasonable application" of clearly established Supreme Court precedent only if it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

It is clear that Supreme Court precedent must be on point: "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). Circuit precedent may not "refine or sharpen" Supreme Court precedent into clearly established law for AEDPA purposes, even if there is broad agreement among the courts of appeals. *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013). Even so, disagreement among the courts of appeals "can reflect a lack of guidance from the Supreme Court and signal that federal law is not clearly established." *Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017).

Clearing AEDPA's relitigation bar is difficult, and "it was meant to be." *Richter*, 562 U.S. at 102. Congress enacted AEDPA "to further the principles of comity, finality, and federalism." *Williams v. Taylor* (*Williams II*), 529 U.S. 420, 436 (2000). Thus, AEDPA prevents *de novo* federal review of all but the most egregious cases.

II.   *Which State Habeas Decision?*

To begin, we must determine which state court decision to consider: the state district court's reasoned recommendation to deny relief or the actual denial of relief without stated reasons issued by the Texas Court of

7

Criminal Appeals. Uvukansi challenges the findings of the former ruling, arguing in particular that it placed the burden on him to prove that the testimony affected the jury verdict. If we "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" — here, the state district court's recommendation on habeas — we consider the lower court's actual reasoning. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). The State finds no error in the state district court's ruling but also argues it would be proper to consider only the unreasoned appellate decision and "determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Richter*, 562 U.S. at 102.

A panel of this court recently determined that when there is a prior reasoned decision, *Wilson* creates a rebuttable presumption that we should "look through" an unreasoned denial of habeas relief to that prior decision. *Wooten v. Lumpkin*, 113 F.4th 560, 567 (5th Cir. 2024); *see Wilson*, 584 U.S. at 131 (holding that *Richter* applies when there is "no lower court opinion to look to"). This presumption may be rebutted by evidence indicating that the unreasoned denial relied on reasons different from those advanced by the lower court. *Wilson*, 584 U.S. at 132. For example, "the unreasonableness of the lower court's decision itself provides some evidence that makes it less likely the [higher] court adopted the same reasoning." *Id.* The presumption may also be rebutted by showing that "convincing alternative arguments for affirmance" were made before the higher court or that there was a "valid ground for affirmance that is obvious from the state-court record." *Id.* Further, the text of the unreasoned denial might imply — through citations or other means — that the decision rested on alternative grounds. *Wooten*, 113 F.4th at 567 (higher court's citation of harmless error cases helped rebut *Wilson*'s "look through" presumption).

The State argues we should not consider findings or conclusions made by a state district court pursuant to Section 3 of Article 11.07. That is because that statute provides for the court to recommend, not decree, an outcome. Therefore, there is no prior final judgment to look to. It is true that the Supreme Court has occasionally referred to "one reasoned state judgment" and "later unexplained orders upholding that judgment." *See Wilson*, 584 U.S. at 129 (quoting *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991)). We do not see the use of "judgment" in *Ylst*, though, to be a limitation on look-through principles. What we are seeking is reasoning that the higher state court may have accepted in reaching its decision. The very purpose of initial proceedings followed by recommended findings and conclusions, whether by a state district judge under Section 3 of Article 11.07 or by a United States magistrate judge under 28 U.S.C. § 636(b)(1)(B)–(C) (both procedures were utilized for Uvukansi's claims), is to provide both the evidence and an initial, reasoned explanation of what the evidence shows and the relevant law requires. We then can review the controlling ruling for evidence of acceptance or rejection of the recommendations.

In fact, the *Wooten* opinion dealt with a Texas district court's recommended findings under Texas Code of Criminal Procedure Article 11.07, which were followed by the Texas Court of Criminal Appeals' denial of the writ of habeas corpus "without written order." 113 F.4th at 566.[3] Thus, we have already implicitly rejected the State's argument that we cannot look through to a decision consisting only of recommendations.

Here, we find that the State has not rebutted *Wilson*'s "look through" presumption. First, as discussed below, the state district court's

---

[3] Though our opinion neither cited Article 11.07 nor gave many procedural details, a review of the record in *Wooten* reveals the same procedure was involved there as here.

recommendation was not obviously unreasonable.[4]  *See Wilson*, 584 U.S. at 132 (majority opinion).  Second, the State did not raise "convincing alternative arguments for affirmance" in its objections to the state district court's recommendation.  *Id.*  Notably, the state district court adopted the State's materiality argument nearly verbatim, including its standard for materiality.  The State's only alternative argument was that Jeresano's testimony was not false.  We do not find that argument compelling, and nothing in the record indicates that the Texas Court of Criminal Appeals adopted it.  Third, the unreasoned denial did not otherwise imply that it rested on alternative arguments.  *See Wooten*, 113 F.4th at 567.  The denial read, in its entirety, "Denied without written order."  Neither party has cited Texas authority on how the Court of Criminal Appeals may have described the effect of an unreasoned decision in this context, so there is no specific state practice to apply.  We conclude it is appropriate to consider the reasoning of the recommendations.[5]

With our sights properly set on the state district court's actual reasoning, we next consider whether Uvukansi clears AEDPA's relitigation bar.

## III.    *AEDPA's Relitigation Bar*

Staring down AEDPA's strict relitigation bar, Uvukansi marshals a legion of arguments to conquer it.  *First*, he argues that the state district court

---

[4] We note that placing too much weight on the reasonableness of the lower court's decision creates a lose-lose situation for Section 2254 applicants.  If AEDPA's relitigation bar is only cleared by an unreasonable decision and the "look through" presumption does not apply when the decision is unreasonable, then *Richter*'s standard will always apply in practice.  *See Wilson*, 584 U.S. at 146–47 (Gorsuch, J., dissenting).  We do not think the Supreme Court meant for us to apply *Wilson*'s "look through" presumption so parsimoniously.

[5] Uvukansi suggests that the Texas Court of Criminal Appeals always rejects findings and conclusions it disagrees with.  Because the *Wilson* presumption applies, we need not determine whether this is true.

wrongly required him to prove by a preponderance of the evidence that he would not have been convicted absent the false testimony. We agree that would be the wrong standard. "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . [.]'" *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). The state district court, though, applied the traditional "reasonable likelihood" test, stating this: "False testimony is material only if there is a reasonable likelihood that the false testimony affected the judgment of the jury or affected the applicant's conviction or sentence." It was also proper for the court to refer to a need for a preponderance of evidence, as habeas applicants bear the burden of proving a constitutional violation to qualify for relief.[6] The state district court did not impose a standard higher than the Supreme Court's "reasonable likelihood" standard.

*Second*, Uvukansi claims the state district court wrongly placed the burden of proof on him instead of the State. He argues the proper standard is the harmless error test from *Chapman v. California*, 386 U.S. 18 (1967). He insists the State, as the beneficiary of the false testimony, must prove beyond a reasonable doubt that the false testimony did not affect the jury's verdict. *See id.* at 24. No majority of the Supreme Court has indicated that *Napue*'s materiality standard is the same as *Chapman*'s harmless error standard. *See Ventura v. Att'y Gen. of Fla.*, 419 F.3d 1269, 1279 n.4 (11th Cir. 2005) (making this observation). The Court came close in *Bagley*, but the footnote that

---

[6] At oral argument, Uvukansi noted *O'Neal v. McAninch*, 513 U.S. 432 (1995), which held that when judges are in grave doubt as to the harmlessness of an error, the habeas applicant must win. *Id.* at 437. Therefore, Uvukansi argues, he does not bear the burden of proof on materiality. Uvukansi puts the cart before the horse: his argument assumes that the Supreme Court has clearly established that materiality is not an element of the constitutional violation itself but rather a means of avoiding reversal. As discussed below, that is far from clear.

purported to hold as much was in a portion of the opinion joined by only two Justices. *United States v. Bagley*, 473 U.S. 667, 679 n.9 (1985) (opinion of Blackmun, J.).

We conclude that the Court has left ambiguous whether materiality is an element of a *Napue* violation, which Uvukansi would presumably have to prove, or a means of avoiding reversal, which Uvukansi might not have to prove. As a leading treatise has stated, many of our sister circuits have treated materiality as an element of a *Napue* violation, not merely as a means of avoiding reversal. 6 Wayne R. LaFave et al., Criminal Procedure § 24.3(d) n.155 (4th ed. 2024) (collecting cases). The practice of other circuits suggests the Supreme Court has not clearly placed the burden of proof on the State. *Evans*, 875 F.3d at 216.

*Third*, Uvukansi claims the state district court wrongly held that false credibility testimony — as opposed to false inculpatory testimony — is *per se* immaterial. We conclude that Supreme Court precedent clearly establishes that false credibility testimony may be material. *Napue*, 360 U.S. at 269. The state district court did not hold otherwise. It simply considered the fact that the false testimony only went to Jeresano's credibility as a factor in judging its materiality. The record shows that, far from holding the false credibility testimony *per se* immaterial, the state district court considered whether its force was diminished by later testimony impeaching Jeresano's credibility. No Supreme Court precedent clearly bars this curative approach.

The state district court's conclusion that Jeresano's testimony was not material was neither "contrary to" nor "an unreasonable application of" clearly established Supreme Court precedent. Uvukansi has identified no Supreme Court precedent resolved differently "on a set of materially indistinguishable facts." *Williams I*, 529 U.S. at 413. Nor has he shown how, in light of Supreme Court precedent, the state district court's ruling "was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

The most analogous Supreme Court precedent is *Napue*, in which a prosecutor promised the State's star eyewitness — who had been sentenced to 199 years in prison — that he would recommend a sentence reduction. 360 U.S. at 265–66. At trial, the witness falsely denied being made any promises, although the jury knew that "a public defender 'was going to do what he could'" to help the witness. *Id.* at 267–68. The jury's knowledge that a public defender would help the witness did not render the false testimony immaterial. *Id.* at 270. Knowing that the prosecutor had cut a deal with the witness would have put the testimony in a substantially different light. *Id.*

Here, by contrast, the jury knew that Jeresano's sentencing had been continually reset so the federal prosecutor would be able to reward his cooperation by moving for a reduced sentence. True, the jury did not know that the state prosecutor had agreed to write a letter to the sentencing judge or that the federal prosecutor had firmly agreed to recommend a reduced sentence. Unlike the jury in *Napue*, though, the jury here knew that Jeresano likely had a deal with the prosecution. Under these circumstances, the state district court's conclusion that Jeresano's false testimony was not material is not objectively unreasonable under "existing law beyond any possibility for fairminded disagreement," nor are *Napue*'s facts "materially indistinguishable." *Richter*, 562 U.S. at 103; *Williams I*, 529 U.S. at 413. Even if we might have reached a different conclusion than the state district court, that alone is not enough to clear AEDPA's relitigation bar.

Uvukansi has not shown that the state district court's materiality analysis was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1). Additionally, he has not shown that the state district court's analysis "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," as he has not shown "by clear and convincing evidence" that the state district court's relevant factual findings were wrong.[7] *Id.* § 2254(d)(2), (e)(1). Uvukansi does not clear the relitigation bar, so we cannot reexamine the alleged *Napue* error *de novo*.

\*   \*   \*

We do not condone the prosecutor's conduct in this case. Hiding the true nature of the sole identification witness's motive to testify in a capital murder case is reprehensible. Even so, Uvukansi had the chance to vindicate his claims in the state habeas process. Congress has decided that "principles of comity, finality, and federalism" should prevent us from reconsidering constitutional claims litigated in state court, except in the most egregious cases. *Williams II*, 529 U.S. at 436. This is not one of those cases.

AFFIRMED.

---

[7] Uvukansi attempts to force arguments about materiality into this provision, but materiality is a mixed question of law and fact considered under Section 2254(d)(1), not Section 2254(d)(2). *Corwin*, 150 F.3d at 471; *Nobles*, 127 F.3d at 416.

No. 23-20435

HAYNES, *Circuit Judge*, concurring:

I reluctantly concur with the affirmance based upon the requirements of AEDPA. If the standard applied to the state court decision was any lower, I would vote for reversing because of the prosecutor's conduct as discussed in the opinion. But, given the high standard for habeas cases based upon state court decisions, I agree that we must affirm.